SPRINKLE and wife *v.* FOOTE, MARTIN *et al.*

No counsel in this Court for plaintiff.

*Barnes,* for defendant.

PER CURIAM. Judgment affirmed.

---

O. SPRINKLE and wife *v.* JAS. H. FOOTE, B. P. MARTIN and others.

A remark of the Judge below, calculated to mislead and prejudice the minds of the jury is error, and entitles the party against whom it is made to a *venire de novo.*

CIVIL ACTION for the recovery of land, tried before *Mitchell, J.,* at the Spring Term, 1874, of WILKES Superior Court.

The plaintiffs claimed the premises under a judgment in their favor against the defendant, B. C. Martin, obtained at Fall Term, 1869, and an execution thereon returnable to Spring Term, 1870, and a levy on what is called the "mill tract," and a sale thereof, by the sheriff on the 22d, April, 1870; at which sale the *feme* plaintiff became the purchaser. And also, by another execution on the same judgment, still unsatis-fied, to Spring Term, 1871, and a levy on what is called the "home tract," a sale by the sheriff on the 3d December, 1870, when the *feme* plaintiff also become the purchaser. She hav-ing the deeds from the sheriff for both tracts.

This action was originally brought against B. P. Martin and the other defendants, except Foote, to Spring Term, 1871, all of the defendants except Foote, being in possession of some part of the premises, the subject of this controversy.

At the return term, Foote moved to be admitted to defend as landlord, which, after objection on the part of the plaintiffs, was allowed by the Court; whereupon he filed an answer, in which he claimed that he was the sole owner of the lands in controversy, and that the other defendants were his tenants. For title, Foote relied on a judgment obtained in the County Court of Rowan county, at —— term, 186—, in favor of one Brown against the defendant, B. P. Martin and the plaintiff, O. Sprinkle, as indorser of said Martin, which judgment was docketed in the Superior Court of Wilkes, on the 18th day of February, 1869; and during the same month an execution issued thereon, from the Superior Court of Wilkes, returnable in sixty days; that the same was levied on the lands in dispute as the property of the defendant, B. P. Martin, which were sold by the sheriff on the 14th April, 1869, when Foote alleges he bought the same through an agent, one Leland Martin, (Foote not being present at said sale.)

He, Foote, offered as evidence the deed from the sheriff for said tracts of lands to him, dated 22d day of August, 1870, and with the deed, produced the execution under which the lands were sold, on which execution was indorsed a levy on all

the land in dispute as the property of the said B. P. Martin, with the following additional indorsement under the levy:

"After due advertisement according to law, sold the above described lands of B. P. Martin, at the Court House door in the town of Wilkesboro' on the 14th day of April, 1869, to the highest bidder, under the within execution, when James H. Foote became the purchaser, being the last and highest bidder, at $1,500; my fees and commissions retained; paid into office $1.00; B. P. Martin's receipt filed for surplus on debt and costs. Fall Term, 1869. Execution satisfied in full. See plaintiff's receipt for debt."

(Signed)                        "J. W. HAYES, Sheriff.
                                "By J. N. HAYES, D. Sh'ff."

The above return was written on a separate piece of paper, which was closely pasted on the back of the execution; and the same being removed in the presence of the Court, there appeared under it, and entirely concealed by it before removal, the following indorsement, to wit:

"And after due advertisement according to law, land sold at the Court House door on the 14th day of April, 1869, for the sum of $1,500, to Lee Martin, he having been the last and highest bidder, and refuses to pay the purchase money. This April 22d, 1869." Signed as above.

In regard to this execution, under which Foote purchased, the plaintiffs introduced the Clerk of the Court, who stated that sometime after the sale under that execution, J. N. Hayes, the deputy sheriff, applied to him and made an affidavit that the said execution was lost; and that he thereupon made out and delivered to him a duplicate of said execution, for him to make his return on which however the deputy did not do. This was 18th July, 1870; and he heard no more of the matter until August, 1870, when the original execution was

returned to his office, by the high sheriff, with the paper pasted on the back and the return written on that, as it appeared at the trial; that he had seen the execution in the hands of the sheriff a few days before he returned it, and the sheriff stated he had found it. He, the witness, did not know whether the return on the paper pasted on the back, was then on it or not.

On the part of the defendant, the sheriff stated, that before the sale at which Foote purchased, he had an understanding, either by letter or otherwise, with Foote, who then lived in Wake county, that he, Foote, had become the owner of the judgment in favor of Brown, and intended to purchase the lands of B. P. Martin, at the sheriff's sale, through Leland Martin, his agent; that he did not communicate that to his deputy, who sold the land; that after the sale, he saw the execution in the hands of the deputy, with the endorsement on the back of it; that Leland Martin was the purchaser and had failed to pay, &c. That he then told his deputy of the understanding with Foote, and that the endorsement on the execution was wrong, and that it must be so corrected as to show that Foote was the real purchaser. The sheriff further stated, that shortly after this, the execution was lost, and remained lost until a short time before it was returned to the office with the indorsement on the paper pasted on its back.

It was also in evidence that the land was composed of what was originally two adjoining tracts, but that they had been owned and occupied by B. P. Martin as one tract for many years. The plaintiff stated, that at the sale at which Foote purchased, that part of the land called the "mill tract" was not sold by the sheriff. The witnesses for the defendants, who were present at the sale, stated that *all* the land was sold by the sheriff, and his levy and return showed that the whole of it had been levied on and sold.

Plaintiff introduced evidence tending to show that the land was purchased by Foote under an arrangement between him and B. P. Martin, or with Martin's funds, or for his use, and was held in trust for Martin; and among other things, that

Foote had at same time a note on one Shuford for $1,000, or more, which belonged to B. P. Martin, and had collected a part of the money thereon ; but whether he had this note before or after the sheriff's sale to Foote did not appear. Defendants Foote and Martin both swore that the land was not bought under arrangement or agreement between them ; that it was bought by Foote out of his own money, for his own use and not on any trust for Martin. That Foote, after deducting the amount of the judgment under which it was sold, had paid all the remainder of the price of $1,500 to Martin ; and that ever since his, Foote's purchase, Martin had occupied it as his tenant, paying rent every year. That the Shuford note had no connection with the sale of the land, and no part of it had been entered into the land transaction ; that Foote had taken the note to collect and had collected a part of it, and paid over to Martin all his share of what had been collected.

Plaintiff's counsel asked his Honor to instruct the jury :

1. That the execution under which Foote purchased ought to have issued from Rowan county and not from Wilkes.

2. That it was void because it was made returnable in sixty days, and not to term.

3. For the reason that the sheriff had no authority to alter his return in the manner disclosed by the evidence.

His Honor refused these instruction, and remarked upon the 3d point ; that as a general rule, the sheriff would not have the right to alter a return once made, without leave of the Court, but that rule did not apply to the facts proven in this case. He told the jury that he did not fully apprehend what connection the Shuford note had with the purchase of the land.

Plaintiffs' counsel asked his Honor to charge the jury that B. P. Martin being the defendant in the execution, under which the plaintiffs purchased, he could set up no title against the plaintiffs ; and Foote being allowed by the Court to defend, the plaintiffs objecting, he, Foote, had no right to set up any defence that Martin could not set up. His Honor refused to give this instruction.

It was admitted by the counsel of defendants in the argument, and also stated to the jury by the Court, that if, at the sale under which Foote purchased, the sheriff did not sell the portion called the " mill tract," the plaintiffs would be entitled to recover that ; and also, if there was any contract or arrangement, whereby Foote bought the land for Martin's benefit, or any trust for his use or benefit, or if Foote now holds it on any trust for Martin, the plaintiffs were entitled to recover.

The jury returned a verdict for the defendants. Rule by plaintiffs for a new trial ; rule discharged. Judgment and appeal by plaintiffs.

*Furches*, for appellant.
*Folk & Armfield*, contra.

BYNUM, J. If the defendant, Foote, purchased the land in dispute, as alleged, with the funds of B. P. Martin, the judgment debtor, the title did not pass, and the plaintiff would be entitled to recover. The plaintiff introduced evidence tending to establish this fact, and among other things, he proved that about the time of the sheriff's sale to Foote, he, Foote, had in his possession a note on one Shuford for one thousand dollars or more, which belonged to the said Martin, and had collected a part of the money thereon. It also appeared that after the sale and purchase by Foote, that Martin, the defendant in the execution, remained and still remains in the occupation of the premises, and further, that his receipt was endorsed on the execution for the overplus of the purchase money after satisfying Foote's judgment, neither the amount of this judgment or of the overplus appearing from the case.

There certainly was considerable evidence tending to show that Martin was the real purchaser and not Foote, and the evidence touching the " Shuford note " was natural in that inquiry, yet his Honor charged the jury " that he had not fully apprehended what connection the " Shuford note " had with the purchase of the land."

A remark of this kind falling from the Court in repeating and commenting upon, the evidence, to the jury, was well calculated to withdraw that part of the evidence from their minds, and certainly to weaken its proper weight in the chain of circumstances, tending to show that Foote had purchased the land for the benefit of Martin, and with funds in part derived from this " Shuford note."

The remark, being thus calculated to mislead and prejudice the minds of the jury, it was error, for which a *venire de novo* must be granted. The other points made in the case it is unnecessary to discuss now. This seems to us the main one.

