G. L. WINBURNE v. BATTLE BRYAN.

An execution debtor is entitled to damages to the amount of all loss sustained by reason of the failure of a sheriff to perform the duties which the law requires him to perform. Therefore where a sheriff, having an execution in his hands against A, sold a lot or parcel of land belonging to A, under execution, and failed to serve upon him the written notice required by law to be served upon the owner, before the sale of land under execution: *Held*, that it was error to charge the jury that the plaintiff was only entitled to nominal damages, unless he proved that the property sold for less than it would have sold for if the notice had been given: *Held further*, that it was error to grant a new trial on the ground that the damages are excessive, when the evidence showed the actual amount of damage, and a verdict was rendered accordingly.

CIVIL ACTION for damages, tried before *Moore, J.,* at July Term, 1874, EDGECOMBE Superior Court.

The plaintiff alleged that on the 15th day of February, 1873, Stern & Goodman obtained a judgment against him, before a Justice of the Peace, for $18.25 and cost. On the 15th of February, 1873, a *fi. fa.* was issued on said judgment, and delivered to the defendant, who was then the duly elected and qualified sheriff of Edgecombe county. On the 20th day of April, 1873, defendant offered for sale under said execution a

portion of the real estate of plaintiff, to-wit: a lot in the town of Tarboro. Defendant negligently failed to serve on the plaintiff a copy of his advertisement relating to the sale of said real estate, ten days before the sale thereof. Defendant failed to advertise said real estate, thirty days before the sale thereof, as required by law. Said real estate, owing to the negligence of defendant, sold for a sum greatly below its value.

The defendant denied failing to serve a copy of the advertisement of sale, and also the failure to advertise said real estate thirty days before the day of sale. Defendant also alleged that said real estate was fairly sold to the highest bidder, and whether or not it brought its value, defendant was not it fault.

The following issues were submitted to the jury:

1. Did the defendant Bryan give the plaintiff Winburne the notice required by law?

2. If he did not, what was the amount of damages?

The plaintiff was introduced as a witness in his own behalf, and testified as follows:

The defendant, as sheriff, had an execution against me for about $20. On Sunday before Court, he sent me a paper by the jailor. I laid it down without reading it, thinking it was about some work done in the jail, about which there had been a controversy. The next day Mr. Odenheimer came to my house and told me the sheriff had sold my lot. I then examined the paper, and found that it was a notice that he should sell my property that day. Upon cross examination the plaintiff testified: Several weeks before Court, Bryan came to my house. I was sick in bed, and had been nearly dead. I was then getting better. He asked me for the debt. I told him when I got up I would attend to the matter. He did not say he should advertise and sell my property. He never did tell me so. I did not know it until Mr. Odenheimer told me my lot was sold.

William M. Pippin, a witness for the plaintiff, testified as follows: I happened to be near the Court house on Monday, and heard the sheriff crying the Winburne lot, about a dozen

persons standing around. I went up and asked if Winburne knew it. The sheriff said he did. I bid off the lot at $177. Others also bid. The lot is worth at least $325. I was offered $400 for it, on time, one-fourth cash. On cross examination, witness testified as follows: I let Winburne have it back, by paying me $100 profit. I considered it a concession.

Defendant testified as follows: About five weeks before sale, I went to Winburne's house and told him I should advertise and sell his property. I was going to New York in a few days. I met Winburne on the street about two weeks before Court, and told him I had advertised and should sell his property at Court. Eight or nine days before Court, I gave the jailor notice to serve on Winburne. On cross examination, defendant testified: Winburne had been very sick, but was able to get out two or three weeks before Court.

Jailor testified: I gave the notice to plaintiff on Sunday evening before Court. I did not tell him what it was, only that Bryan sent it.

The plaintiff was recalled, and testified as follows: The conversation on the street, was about the work in the jail. Bryan did not tell me he had advertised and would sell my property. Had been able to walk out two or three weeks before Court, but had a relapse just before Court.

His Honor charged the jury that plaintiff was only entitled to nominal damages, unless the property sold for less than it would have sold for if the notice had been given; that the damage must be the direct result of the want of notice, and that the plaintiff must prove that.

The jury found the issues in favor of the plaintiff, assessing the damages at $100.

There was a motion for a new trial, on the ground that the verdict of the jury was contrary to the weight of the evidence on the question of damages, and that the damages were excessive.

Plaintiff's counsel resisted the motion on the following grounds:

1. All the evidence supports the verdict. There is no evidence upon which the jury could have given less.

2. It is not necessary to prove that the damages resulted directly from failure to give notice.

3. If it is necessary, then the proof of failure to give notice, and the damages, justified the jury in the inference that the damages did directly result from the failure of notice.

The Court allowed the motion, and the plaintiff appealed.

*Perry* and *Howard*, for appellant, insisted:

1. An appeal is allowed from an order of a judge granting a new trial, which involves a matter of law or legal inference. C. C. P. secs. 299, 236, par. 4.

2. There was error in granting a new trial.

(a) His Honor was mistaken in the rule of damages. The statute, Bat. Rev. chap. 44, sec. 14, requires a written notice to the plaintiff, to apprise him of the particular property to be sold.

(b) There was no evidence to rebut the presumption that the damage sustained by plaintiff was caused by the defendant's negligence. *Jenkins* v. *Troutman*, 7 Jones 169 ; Sedgewick on Dam. 509, 518.

No counsel *contra* in this Court.

PEARSON, C. J.   The defendant was in default, by failing to give the written notice which the law made it his duty to give, and the plaintiff was entitled to be indemnified for all loss he had suffered by reason of this default.

We cannot concur with his Honor in the opinion that the plaintiff was only entitled to nominal damages unless he proved that the property sold for less than it would have sold for, if the notice had been given. *Non constat*, that the property would have been sold if the defendant had performed the duty required of him by law.   On the contrary it is almost

an irresistible inference from the evidence, that the plaintiff would have satisfied the execution and prevented a sale, if he had received the required notice, and this is the very purpose of the statute. The execution was for only about $20, the land was worth $300 in cash—plaintiff a short time after sale gave the purchaser $100 for his bid—that is, paid up the execution cost and $100 over and above; and so he had the ability and would of course have satisfied the execution and stopped the sale if he had received notice.

The plaintiff is out of pocket $100 over and above the amount of the execution, by reason of the default of the defendant, and why he should not be indemnified to that extent, we are unable to conceive; indeed we incline to the opinion that the jury might have been justified in going farther and making some allowance for the inconvenience of being compelled to raise $100 extra, when, had the defendant done his duty, $20 would have answered; to say nothing of the fact of his being obliged to beg the purchaser to let him have back his lot, at that loss, or of the aggravating circumstance that the plaintiff was sick, taken with a relapse, and on the point of death, which incidents tend to move creditors and officers to give indulgence to debtors, and would seem to aggravate the default of the officer in forcing a sale without due notice.

We think the amount of damages found by the jury not excessive, and his Honor erred in granting a new trial on that ground.

PER CURIAM. Judgment according to verdict in Court below.