## STATE v. ISRAEL SAVAGE.

*Indictment—Murder—Evidence—Cooling Time—Jury.*

1. On a trial for murder, it was in evidence that the prisoner, the deceased and others were at work in a field together, when a dispute occurred between the deceased and a kinswoman of prisoner ; that prisoner reproved deceased for troubling her when deceased remarked " if you make me mad I would think no more of going to the house and getting Mr. J's gun and shooting you than nothing," and prisoner replied " if you want to get the gun, you had better go ;" that then the prisoner went off and in about half an hour returned with a hatchet behind him and asked deceased if he meant what he said ? the deceased said he did, and thereupon the prisoner struck him with the hatchet and killed him ; *Held*, that nothing had occurred to dethrone the prisoner's reason, and His Honor below might have told the jury without any qualification that ample cooling time had intervened.

2. During the selection of the jury on a trial for murder, several jurors answered that "they had formed and expressed the opinion that the prisoner was guilty," whereupon His Honor said " that in olden times, Judges sometimes punished men for expressing opinions in such cases, but the Court did not propose to do that ; and such expressions might have a tendency to prejudice the community from which jurors were to be selected, and thereby the prisoner might be seriously damaged. Hereafter it was to be hoped that there will be no such expression of opinion in order that fair trials may be had for all who are accused of crime ;" *Held*, not to be error.

INDICTMENT for Murder, tried at January Special Term, 1878, of NORTHAMPTON Superior Court, before *McKoy, J.*

The prisoner was charged with the killing of Joseph Hill. The facts material to the points decided are as follows : The prisoner, the deceased and others were gathering cotton in a certain field, and in consequence of a dispute between the deceased and a woman (who was a kinswoman of prisoner and engaged at work with them), he seized her in an angry manner, and the prisoner reproved him and remarked that

her husband was crippled and that he could not serve his
wife so. The deceased replied, "if you make me mad, I
would think no more of going to the house and getting Mr.
J's gun and shooting you than nothing." The prisoner re-
plied, "if you want to get the gun, you had better go."

He (prisoner) then went to the house a short distance off
and returned in about a half hour with a hatchet behind
him, and upon approaching the deceased, asked him if he
meant what he had said. The deceased said he did, and
thereupon the prisoner struck him with the hatchet on the
head and killed him.

The prisoner's counsel asked the Court to charge the jury,
"that if they were satisfied the assault made by deceased
upon prisoner's kinswoman, and the threat he made to shoot
prisoner, dethroned the prisoner's reason, and he did the
killing before he had time to cool, and without malice, it
was manslaughter and not murder." His Honor declined
to give the instruction as prayed for, but in response there-
to said that there could be no murder without malice afore-
thought, and if the blow had been given to save the woman's
life, or to protect her [from great bodily harm, he would
be guilty of neither; and that the question of cooling time
did not arise where there had been no conflict between
prisoner and deceased, and where no assault had been com-
mitted upon the prisoner; nor where, as in this case, the
deceased used a switch in his assault on the woman, and the
prisoner used a deadly weapon after he returned and found
the woman in no danger, and that words only would not
mitigate the crime from murder to manslaughter. The jury
returned a verdict of guilty of murder.

The prisoner's counsel moved for a new trial because the
Court had said,—when only two jurors had been selected
and upon several other jurors answering that "they had
formed and expressed the opinion that the prisoner was
guilty,"—"that in the olden times, Judges sometimes pun-

ished men for expressing opinions in such cases, but the Court did not propose to do that. And such expressions might have a tendency to prejudice the community from which jurors were to be selected, and thereby the prisoner might be seriously damaged. Hereafter it was to be hoped that there will be no such expression of opinion in order that fair trials may be had for all who are accused of crime." The motion was denied. Judgment. Appeal by prisoner.

*Attorney General*, for the State.
No counsel for the defendant.

FAIRCLOTH, J. The prayer of the prisoner, that if the jury believed that his reason was dethroned, and that he did the killing before he had time to cool, and without malice aforethought, was correct as a legal proposition, but the difficulty is that there was no evidence to support it.

Nothing had occurred to dethrone his reason, and His Honor might have told the jury without any qualification, that ample cooling time had intervened. The fatal blow was given with a concealed and deadly weapon, not in defence of the life of the prisoner's kinswoman, nor to save her from great bodily harm, for she was not in danger in either respect. The remarks of His Honor in the presence of the venire, pending the selection of the jury, were not calculated to do the prisoner any harm, especially as he disavowed any purpose to punish them for the expression of any opinion they might have formed. The subsequent action of the jurors as they were called, negatives the assumption that they had been intimidated by the Court. There being no other exceptions and no error appearing from the record, the judgment must be affirmed.

Let this be certified in order that the Court below may proceed according to law.

No error.

PER CURIAM.                              Judgment affirmed.