## STATE v. JOHN GRADY.

*Homicide—Evidence—Judge's Charge—New Trial.*

1. Upon a trial for murder, the prisoner offered in evidence the examination in writing of a witness taken before the coroner's jury, and showed that the witness' name was endorsed on the bill of indictment, but not being called for the prosecution, the prisoner procured a summons to be issued upon which the sheriff made return that the witness could not be found; *Held*, that the evidence was incompetent and properly rejected.

2. If evidence favorable to the prisoner be omitted by the judge in recapitulating the testimony to the jury, it is the duty of prisoner's counsel to call it to the attention of the court that the same may be supplied. After verdict, an exception grounded upon such omission will not be sustained.

3. A new trial will not be granted for an erroneous statement of the law which the finding of the jury corrects.

4. Whether the effect of a new trial granted, in a case where the jury acquit of murder and convict of manslaughter, is to put the prisoner on trial a second time for the crime charged in the indictment—*Quære*. But the court intimate that the doctrine announced in *State* v. *Stanton*, 1 Ired., 424, should not be disturbed.

(*State* v. *Young*, 1 Winst., 126; *State* v. *Taylor*, Phil., 508; *State* v. *McLeod*, 1 Hawks, 344; *State* v. *Valentine*, 7 Ired., 225; *State* v. *Scott*, 2 Dev. & Bat., 35; *State* v. *Haney*, Ib., 390; *Whissenhunt* v. *Jones*, 80 N. C., 342; *State* v. *Caveness*, 78 N. C., 484; *State* v. *Cæsar*, 9 Ired., 391; *Reynolds* v. *Magness*, 2 Ired., 26; *Glenn* v. *R. R. Co.*, 63 N. C., 510; *Winburne* v. *Bryan*, 73 N. C., 47; *State* v. *Stanton*, 1 Ired., 424, cited and approved.)

INDICTMENT for Murder tried at February Term, 1880, of NEW HANOVER Criminal Court, before *Meares, J.*

The jury found the prisoner guilty of manslaughter, judgment, appeal by prisoner.

*Attorney General*, for the State.
*Mr. D. K. McRae*, for the prisoner.

SMITH, C. J.   The prisoner is charged in a single count of the indictment with the murder of one John Taylor on the night of the 30th day of November, 1879, by giving him a blow on the head with a large pole, capped with iron at one end.   There was little discrepancy in the testimony of the witnesses as to the facts attending the homicide, but there was a conflict as to the person who gave the fatal stroke.   The facts are set out in the case accompanied with a detailed statement of the testimony delivered to the jury, and may be briefly summarized as follows:

An alarm of fire over the river (Cape Fear) and opposite the city (Wilmington) had attracted a fire company to the burning building, and the prisoner was one of a bucket company who were ordered to impress a boat to be used in carrying over coal for the fire engine.   The deceased owned and was then in possession of a flat boat which was tied up to the wharf, and another lay outside against it.   The officer in command of the bucket company, a large number of whom were present, ordered the boat of the deceased to be taken, to which the latter at first objected, but soon after consented to have taken and used when he had removed his store of provisions from it.   Meanwhile some of the company had jumped into and taken possession of the outside boat and were pushing it along that of the deceased, when the officer in charge of the force and the deceased were observed to be engaged in a struggle—the deceased endeavoring to hold his boat to the wharf with a boat-hook, and the officer to break his hold and wrench the boat-hook out of his grasp. At this juncture some one cried out, "Don't you see they are fighting the captain?" and some one in the outside boat, ascertained by the verdict to be the prisoner, dealt a blow with a fire-man's pole on the head of the deceased, and from which he shortly after died.

The jury under the instructions of the court and upon the evidence heard by them rendered a verdict finding the pris-

oner "not guilty of the murder in manner and form as charged," but, "guilty of manslaughter."

During the trial the prisoner's counsel proposed to read in evidence the examination of one John Williams, taken and reduced to writing at the coroner's inquest held over the body of the deceased, and to remove objections to its competency proceeded to show that the witness' name was endorsed on the bill of indictment, and not being called for the state, a summons had been issued for him at the instance of the prisoner and the sheriff had made return that he could not be found, as, residing in the city, he had that morning left home and was absent. The evidence was refused and this was the first error assigned.

The prisoner's counsel moved the court to set aside that part of the verdict which convicts the prisoner of the felonious slaying, and grant a new trial of the charge; and as to so much as acquits of the crime of murder, that it be adjudged to stand.

In support of the application for a partial new trial the following errors are assigned:

1. In rejecting the deposition taken upon the inquisition of the coroner and offered under the circumstances set forth;

2. For omitting to recall to the attention of the jury, in recapitulating the evidence, certain testimony alleged to have been favorable to the prisoner; and

3. For erroneous instructions in the charge to the jury.

*First Exception:* The refusal of the court to permit the introduction of the examination of the witness, Williams, on behalf of the prisoner was correct and in strict accordance with the law as declared by the court in former adjudications.

In *State* v. *Young*, 1 Winst., 126, it is held that such examination is not competent evidence against a person on trial for homicide. But the very point is decided in the

subsequent case of *State* v. *Taylor*, Phil., 508, where the examination of the witness before a coroner's jury was offered and rejected. "The objection to the evidence," says BATTLE, J., speaking for the court, "was put upon two grounds; 1st, that the testimony was irrelevant, and, 2d, that it was not shown by the prisoner that Wheeler (the witness) was dead, or what had become of him. His Honor rejected the evidence without stating his reasons for it. We are inclined to think that either ground of objection was sufficient *and we are entirely satisfied that the last was.*"

The same principle had been previously applied to examinations before committing magistrates in *State* v. *McLeod*, 1 Hawks, 344, and *State* v. *Valentine*, 7 Ired., 225.

*Second Exception:* The second cause of complaint rests upon an alleged neglect to recite certain portions of the testimony, contained in the exceptions, in the charge to the jury: The facts stated in the case show that no legal grounds exist to sustain the objection. The testimony of the witnesses, in all the material details bearing upon controverted points, seems, as His Honor says, in a condensed form, to have been reduced to writing and read over to the jury in anticipation of any directions upon questions of law. At the close of the recital, the prisoner's counsel called attention to an omitted part of the statement of the witness, Allen, to-wit, "that the man who kept on shoving the flat after the blow was stricken was not the man who struck the deceased." To this the court facing the jury at once responded, "That is true, gentlemen, Allen did say so." No other omission was suggested and no further correction asked. It was the duty of counsel, if evidence important to the defence had been overlooked, then to call it to the attention of the judge and have the omission supplied. It would be neither just to him nor conducive to a fair trial to allow this neglect or oversight, attributable to the counsel quite as much as to the judge, to be assigned for error

entitling the accused to another trial, whatever force it might have in influencing the court in the exercise of an unreviewable discretion to grant it.

Besides, the omitted evidence is only set out in the exceptions submitted several days after the rendition of the verdict, and are, as His Honor states, in some respects incorrectly reported. This objection furnishes no ground for disturbing the verdict as has been often decided. *State* v. *Scott,* 2 D. & B., 35 ; *State* v. *Haney, Ib.,* 390 ; *Whissenhunt* v. *Jones,* 80 N. C., 342 ; *State* v. *Caveness,* 78 N. C., 484.

*Third Exception:* The third exception is to the instructions given to the jury upon matters of law : The facts of the homicide, upon the concurring testimony of the witnesses, and in their most favorable aspect for the prisoner, make the offence of manslaughter, and the jury are fully sustained in their verdict convicting of that offence, by the authority of the *State* v. *Cæsar,* 9 Ired., 391, and the cases cited in the opinions of NASH and PEARSON, JJ.

Numerous instructions in writing were asked for the prisoner, some of which were given, some refused, and others withdrawn. " No exceptions were taken by the prisoner's counsel," as the case states, " to the ruling of the court in regard to any of these instructions, and they are set out here for the reason that after being admitted by the court, they necessarily constitute a part of the instructions to the jury."

We have carefully looked over and considered the instructions, as well those delivered at the instance of the prisoner as those added by the court to complete the charge; and while many of them are but abstract undisputed propositions of law, the law applicable to the facts developed was in our opinion fairly explained to the jury, except in a particular noticed to avoid an inference of its meeting our approval. The instruction referred to is in these words :

" If the jury from the evidence believed that the prisoner

was standing on the outside flat with the fireman's pole in his hand, which was an instrument of a most deadly character, and while the flat was passing that of the deceased, and the deceased was holding on to his gig or flat-pole, and Nixon was trying to wrench the pole out of the hands of the deceased and some one on the wharf cried out, "Don't you see they are fighting the captain," or words to that effect, and at this time the prisoner struck and killed the deceased, this would be a case of murder, unless the jury were satisfied from the nature of the tussle between Nixon and the deceased the prisoner had good reason to believe that the deceased was about to commit a capital felony." The same view is more or less distinctly intimated in the other parts of the charge, and fails to recognize the extenuating legal effect of passion excited in the prisoner's breast by seeing his superior officer engaged in what was said and supposed to be a fight, under the immediate impulse of which he used the instrument in his hands. It was still in this view a case of manslaughter only, and the error of the judge is corrected by the finding of the jury and is rendered harmless.

A misdirection to the jury unless it has, or may have, misled them to a wrongful verdict does not authorize its being set aside. *Reynolds* v. *Magness*, 2 Ired., 26. Nor will a new trial be granted for an erroneous statement of the law which the finding of the jury corrects. *Glenn* v. *The Char. & So. Ca. R. R. Co.*, 63 N. C., 510; *Winburne* v. *Bryan*, 73 N. C., 47.

But as the errors alleged are assigned after verdict, and the prisoner is acquitted of the higher offence to which they relate, and by a conviction of which only would he have been prejudiced, he has no just ground for demanding another jury to try the charge for the minor and included offence.

As our opinion is against the prisoner upon his several

exceptions, it is needless to enquire whether the effect of a new trial granted is to put him on trial a second time for the crime charged in the indictment, or only for that of which he was found guilty. Upon this proposition discussed before us, the decisions in the courts of the different states are conflicting, and the opinions of elementary writers on criminal law and practice are not in entire harmony. In this state it has been ruled, Chief Justice RUFFIN delivering the opinion of himself and his able associates, that when at the instance of a convicted prisoner, charged in several counts in an indictment, on some of which he is found not guilty, a new trial is awarded, the entire verdict is set aside and he is put on trial as before upon the entire bill. *State* v. *Stanton*, 1 Ired., 424. We should be reluctant to disturb the doctrine laid down upon such high authority, and so long since acquiesced in, except upon the most cogent conviction of its error, notwithstanding the weight of modern authority to the contrary. But the question does not arise and we forbear the expression of an opinion upon it until it shall be presented for determination.

There is no error. This will be certified to the criminal court of New Hanover for further proceedings therein.

PER CURIAM.                                         No error.