### THE STATE v. CHARLES T. DEBNAM.

*City Ordinance—Trial—Exceptions—Appeal—Statement of Case.*

1. The ordinance of the City of Wilmington making it an offence, punishable by a fine, for any person to quarrel, or indulge in "loud and boisterous cursing or swearing, or other disorderly conduct, in any street, house, or alley," is valid.

2. It is too late, after verdict, to except because the Judge did not give the jury instructions to which the party might have been entitled had he requested them in apt time, or because the Judge did not correctly recapitulate the testimony.

3. It is only when it affirmatively appears that the action of the Court, in the conduct of the trial, was prejudicial to the appellant that a new trial, as a matter of legal right, will be granted.

4. The statement of the case, on appeal, by the Court imports absolute verity, and nothing will be heard to the contrary.

(*McDaniel* v. *King*, 89 N. C., 29; *Currie* v. *Clark*, 90 N. C., 17; *State* v, *Miller*, 94 N. C.. 902; *State* v. *Gooch*, Ibid., 982; *State v. Hicks*, Phil., 441; *Slate* v. *Whit*, 5 Jones, 224; *Sprinkle* v. *Foote*, 71 N. C., 411; *State* v. *Underwood*, 77 N. C., 502; *Slate* v. *Savage*, 78 N. C., 520; *State* v. *Browning*, Ibid., 555; *State* v. *Laxton*, Ibid., 564; *Slate* v. *Sears*, Phil., 146; *State* v. *Knox*, Ibid.. 312: *State* v. *Parker*, Ibid., 473; *State* v. *O'Neal*, 7 Ired., 251; *State* v. *Grady*, 83 N. C., 643; *State* v. *Calloway*, 90 N. C., 118; *State* v. *Gould*, Ibid., 658, and *State* v. *Cainan*, 94 N. C., 880, cited).

CRIMINAL ACTION, tried before *Meares, Judge*, at July Term, 1887, of the Criminal Court of NEW HANOVER County.

The defendant, Charles Debnam, was charged in a warrant, issued by the Mayor of the City of Wilmington, for a violation of Section 1 (one), Article 7th, of the ordinances of the said city. The said section of the said article reads as follows: "Every person guilty of quarrelling or fighting, or of loud and boisterous cursing and swearing, or of any other disorderly conduct of any kind whatsoever, in any street,

alley, house or elsewhere in the city, shall be fined twenty dollars for every offence."

From the judgment of the Mayor against him the defendant appealed to the Criminal Court of New Hanover County, when, at the July Term, 1887, he was placed upon his trial upon a charge of violating the said ordinance, in that, in the language of the warrant, the defendant " did curse and swear in a loud and boisterous manner, and did abuse one E. A. Anderson upon a street in the corporate limits of the city of Wilmington."

The proof was that there was a board walk on the eastern side of Water street, located near the foot or western end of the market-house in the city of Wilmington, and that the defendant, who is a colored man, and who is a barber by trade, keeps a shop which is located by the side of this board walk and fronts upon the walk.

The State's witness, Dr. E. A. Anderson, testified that he was not a prosecutor in this case, and that the warrant was not issued by the Mayor by his advice or request; that on the occasion in question he was walking slowly along the board walk, and when a short distance from the market building he observed in front of him the defendant and two colored women, who were talking, and standing in such a way as to render it impossible for him to pass through them without touching one of them; that they had blocked up the walk across, from one side to the other; that when he had approached to within a few feet of them he stopped to see if they would give way sufficiently for him to pass, and that he observed that all three of them looked at him, but neither one of them moved or made any motion whatever; that he then turned his body sideways and carefully pushed his way through them, and that in doing so his right arm gently brushed the arm of one of these women; that he did not stop, but continued to walk slowly on, and that he made no remark whatever; that just as this occurred one of the women

said something, and that the defendant, Charles Debnam, became angry and commenced to abuse him in an angry manner and loud enough to attract the attention of those in the immediate vicinity; that he did not stop and did not hear all that the defendant said; that he did not hear the defendant curse or swear, but that he heard him talking in an angry manner and threatening what he would do if that woman was his wife.

The State's witness, Ewell Robinson, testified that his attention was first attracted by seeing and hearing the defendant quarrelling in an angry and violent manner, and persons in the vicinity gathering around him, and that one of the remarks which the defendant made was, "if that woman was his wife he would knock the God damned old scoundrel's head off;" that he was certain that he used this language, and could have been heard more than twenty-five feet distant; that the defendant continued to quarrel and use angry and threatening language for a considerable space of time, applying his threats to Dr. Anderson, and saying what he would do if that woman was his wife.

The defendant testified that, when Dr. Anderson pushed his way between him and the two women, he shoved one of the women off of the sidewalk on the ground; that this woman exclaimed that that man had hurt her, and that he, the defendant, then said, that "if the woman was his wife he would hit him." He denied that he spoke in a loud voice, and he denied that he did any cursing or swearing.

The defendant introduced three colored witnesses, one of whom, a driver of the Express wagon, testified that he arrived at the door of the shop just as the defendant commenced to quarrel; that the defendant was angry, and defendant said that "if that woman was his wife, and that man (referring to Dr. Anderson) was worth millions, he would hit him so hard that he could not hear thunder," whereupon the witness reproved the defendant, by telling him that it was

wrong for him to speak to an old gray-headed gentleman like Dr. Anderson in that way; that the defendant did not speak in a very loud tone of voice, and that the defendant did not curse or swear; that there were very few people in the vicinity at the time; that three came out of the shop close by, and that there were a few others present.

Two other defendant's witnesses (both colored) testified in substance that the defendant did not curse or swear, and that he spoke in a moderate tone of voice, and that defendant is a member of the church, and he used some expression about striking Dr. Anderson, as stated by above witness. There were only a few persons in the immediate vicinity at the time of the occurrence, and these few persons were attracted by the language or voice or manner of the defendant.

The Court instructed the jury that if the defendant cursed or swore, at the place described, in a sufficiently loud tone of voice to attract the attention of those persons who were passing along the street, or who were standing about or attending to their business in the immediate vicinity, it would be a violation of the city ordinance under which he was prosecuted, although cursing or swearing in an ordinary tone of voice, while in a conversation with other persons on the street, would not be a violation of the ordinance; also, that if the defendant quarreled and also used language abusive of Dr. Anderson in an angry manner, at the place described by the witnesses, he would be guilty of a violation of the ordinance in question, although he did not curse or swear at the time. The Court also recapitulated the testimony in the case, and called the attention of the jury to the opposite statements of the State's witness, Ewell Robinson, who had sworn that the defendant did curse, and the statement of the defendant's witness, who had sworn to the contrary.

The defendant's counsel did not offer any prayer for instructions to the jury, and did not ask the Court to alter or

correct its recapitulation of the testimony to the jury, and made no objection to the charge until after the verdict.

While the defendant's counsel was addressing the jury he was interrupted by the Solicitor, who arose and remarked to the Court that he thought the counsel was going too far in his abuse of the witness, Dr. Anderson; and the witness, at the same time, asked the Court for protection.

The counsel for the defendant was making a speech of a somewhat unusual character to the jury.   His assertions and his argument were calculated to give offence to a cultivated, refined and spirited witness like Dr. Anderson; at the same time the coun-el did not use any opprobrious or insulting epithets, and when he was interrupted by the Solicitor he immediately denied that he had abused or insulted the witness.

The Court then remarked, "that the decisions of the Supreme Court in this State had given to counsel very great latitude by way of argument; that this was owing, unfortunately, to the fact that it was impossible to draw the line and say, in every case, precisely how far counsel should be allowed to go when claiming the right to make an argument, asserted by the counsel to be based on the evidence; that it was the right and duty of the Court to interfere and check counsel when they used opprobrious and insulting epithets and applied them to witnesses, but that the counsel in this case had not used any such epithets; that counsel oftentimes abuse the privilege of unrestricted argument by bullragging and abusing highly respectable witnesses in, what this Court considered, an infamous manner, alleged to be done by way of argument, and that, too, without using insulting epithets."

The Court, in recapitulating the testimony of the defendant's witnesses, Madditz, Davis and Butler, used the word "hear," and said that these three witnesses were standing close to the defendant and did not "hear" him curse; but it had been argued to the jury, by counsel on both sides, that

there was a flat-footed contradiction between the State's witness, Ewell Robinson, who swore that the defendant did curse, and three witnesses of the defendant, who had sworn that defendant did not curse.

The jury returned a verdict of guilty, and from the judgment thereon the defendant appealed.

*The Attorney General,* for the State.

No counsel for the defendant.

MERRIMON, J.    The motions, first, that to quash the criminal warrant, and secondly, that in arrest of judgment, were properly disallowed. The city ordinance—certainly so much of it as the defendant is charged with having violated—is valid, and substantially like that of the City of Raleigh, upheld in *State* v. *Cainan,* 94 N. C., 880.    Such acts and conduct of individuals forbidden by it do not, of themselves, constitute a nuisance, or other criminal offence, under the general criminal laws of the State, but are such as, with the view to the peace, good order and well-being of society, especially in dense populations, should be prohibited by proper municipal ordinances, enforced against those who violate them by criminal prosecutions and just punishment.

The defendant did not request the Court to give the jury any special instructions, nor except to the instructions given, nor object to the manner in which it recapitulated the evidence to the jury, until after the verdict was rendered.    Nor does it appear that the Court stated any proposition of law erroneously to the jury, nor was any exception taken, after verdict, on that account.    It was too late after verdict to complain that the Court did not give some particular instruction not asked for, or that it failed to present or suggest to the jury a particular view of the evidence, favorable to the defendant.    If the latter desired this to be done, he had the right to present proper requests for that purpose on the

trial. As he failed to do so in apt time, he has no just ground of complaint. If, by inadvertence, he failed to make such requests, and probably suffered prejudice thereby, this might be ground for a new trial, to be granted in the discretion of the Court—not otherwise. Any other rule would greatly tend to unduly multiply trials and encourage carelessness, negligence and want of proper circumspection on the part of parties to actions and their counsel. *State* v. *O'Neal,* 7 Ired., 251; *State* v. *Grady,* 83 N. C., 643; *State* v. *Calloway,* 90 N. C., 118; *State* v. *Gould,* Ibid., 658.

No question was raised on the trial as to reasonable doubt in the minds of the jury in respect to the defendant's guilt, and as the Court was not requested to instruct them that they must be satisfied of it, beyond a reasonable doubt, that it failed to do so is not ground for a new trial, especially as the offence charged is a mere misdemeanor. *State* v. *Sears,* Phil. 146; *State* v. *Knox,* Ibid., 312; *State* v. *Parker,* Ibid., 473.

Nor do the general remarks of the Court, in commenting on the abuse of privilege of counsel, made on the trial, in response to a request that it interpose its authority to protect a witness for the prosecution from unjust abuse of the counsel for the defendant, in the course of his address to the jury on the trial, entitle the defendant, as a matter of legal right, to have his motion for a new trial, based upon that ground, allowed.

The remarks of the Court referred to did not, in their nature, legal effect and application, tend to prejudice the defendant before the jury, especially as the Court, in declaring its authority and duty to check counsel when they used opprobrious and insulting epithets and applied them to witnesses, said, "that the counsel in this case had not used any such epithets." In other respects, what the Court said did not apply to the counsel, unless by possible inference. The defendant did not suffer prejudice as a legal consequence of what was said, and if he did, in fact, this should have ap-

peared affirmatively by affidavit, or otherwise, to the satisfaction of the Court, to entitle him to a new trial. It is only when the legal consequence of what is said or done on the trial is to the prejudice of a party, before the jury, that he becomes entitled, as matter of legal right, to a new trial. In other cases it must appear affirmatively that he suffered positive injury. *State* v. *Hicks,* Phil., 441; *State* v. *Whet,* 5 Jones, 224; *Sprinkle* v. *Foote,* 71 N. C., 411; *State* v. *Underwood,* 77 N. C., 502; *State* v. *Savage,* 78 N. C., 520; *State* v. *Branning,* Ibid., 555; *State* v. *Laxton,* Ibid., 564.

The evidence was, in some respects, conflicting, and the Court, in recapitulating it to the jury, expressly called their attention to such conflict, stating that a witness for the prosecution had testified as to certain facts, and witnesses for the defendant had testified just the contrary. In this there was no ground for complaint. It is true, the counsel for the defendant, in his motion for a new trial, says, in a measure, to the contrary, but the Judge settled the case on appeal, and it is clear and well settled, that we can only take notice of, and act upon, the facts as stated by him. He is a high and responsible officer of the law, it reposes a great trust in him, and it is his province to state the material facts in settling cases on appeal. Moreover, he is disinterested—he sees what is done, and knows and takes note of the facts appearing in the course of the action before him. Hence, we must accept the case settled on appeal as importing absolute verity, for all the purposes of correcting errors assigned. Any other course of procedure and practice would be unreasonable, subversive of judicial propriety, and give rise to endless and disgraceful confusion. *McDaniel* v. *King,* 89 N. C., 29; *Currie* v. *Clark,* 90 N. C., 17; *State* v. *Miller,* 94 N. C., 902; *State* v. *Gooch,* 94 N. C, 982.

There is no error. Let this opinion be certified to the Criminal Court, according to law.

Affirmed.