## No. 10,251.

### THE STATE OF LOUISIANA VS. JOHN W. SEILEY.

The accused is entitled, during the progress of the trial, to have the testimony of witnesses introduced by the State for the purpose of laying the basis for the admission in evidence of dying declarations, reduced to writing, for the purpose of having it annexed to a bill of exceptions, and brought up in the transcript, for review by this Court, in order to obtain a ruling upon a question of law, on which he relies for relief.

APPEAL from the Thirteenth District Court, Parish of St. Landry. *Lewis*, J.

*Walter H. Rogers* Attorney General, for the State, Appellee.

*E. J. Veazie, C. W. Du Roy* and *Kennett Baillio* for Defendant and Appellant:

The opinion of the Court was delivered by

WATKINS, J. From a conviction of murder and a sentence to lifetime imprisonment, the defendant prosecutes this appeal.

It appears from a bill of exceptions in the record, that when the dying declarations of George Anderson were offered in evidence, defendant's counsel urged, as an objection to their admissibility, that it did not appear that they had been made under a sense of impending dissolution. Thereupon, the State's counsel proposed to show this fact by the testimony of other witnesses, and thus establish a basis for the introduction of said declarations; and the defendant's counsel then "moved the court to open a note of evidence, and to reduce this testimony to writing, as it was a mixed question of law and fact reviewable by the appellate court, and as said accused was notified that the evidence would not lay a sufficient basis."

This request was declined by the trial judge, and, *inter alia*, he assigns the following reasons for his declination, viz:

"The court is not aware of any law requiring the evidence to be taken down in writing in such cases, and refuses the request, for the reason that it was a useless consumption of time; and because the counsel for the defendant had ample opportunity to incorporate the facts in a bill of exceptions, which they have not seen fit to do, although they took the precaution to state the facts in writing, in the exception book, upon which they rely."

He then proceeds to state the purport of what appears in "the exception book," and follows it up with his own version of the entire evidence on the subject, and, thereupon, gives it as his opinion that the deceased "gave his dying declarations under a sense of impending dissolution," and holds that same were admissible in evidence.

In our opinion the judge's reasons do not fairly respond to the objection that was urged.

They disclose a necessity for some fixed and definite rule upon this subject—and it is one of very great importance—in order that the rights of accused persons may be fully protected, without prejudice to those of the State.

We have, on the part of defendant, a demand that the testimony of witnesses, on this collateral issue, be reduced to writing as detailed by them, for the express purpose of bringing it up for review on appeal, in order to have a question of law determined.

We have, on the part of the trial judge, a distinct and emphatic refusal of the defendant's request, because his counsel had enjoyed the opportunity of having them incorporated in a bill of exceptions.

The judge did not rest his conclusions on the adequacy of that statement, but, at once, proceeded to make a different version of the facts, and rested his conclusions upon it. In so doing he clearly demonstrated the fact that, if the defendant's counsel did have ample opportunity to incorporate the facts in a bill of exceptions, it was, at the same time, rendered invaluable to him, by his own, possessing, as it does, the weight of his authoritative sanction.

Under this state of facts, the accused appears in this Court, practically deprived of the evidence on which *he solely* depends, and is necessitated to rely upon that to which the judge has certified.

In the absence of such proof, we have often held, and have felt bound to hold, with the trial judge, in case there should be a difference between his statement of the facts and that of the defendant's counsel Such being the case, is the accused entitled, during the progress of the trial, to have the testimony of witnesses upon a collateral issue of *merit*, reduced to writing, for the purpose of having it annexed to a bill of ex-

ceptions, and reviewed by this Court, in order to obtain a ruling upon a question of law on which he relies?

Unquestionably he has.

While it is not denied that this Court is *without* jurisdiction to examine into, or pass upon any question of fact, in so far as it may appertain to the guilt or innocence of the accused of the charge preferred against him, yet it is indisputable that it *has* jurisdiction to examine and weigh the testimony of witnesses, in the consideration and decision of questions of law growing out of the principal issue in the case, and *which are not submitted to the jury.*

If it had not the power to do so, how could the competency of a juror, or a witness be tested, or the misconduct of a juror determined?

The usual form in which such questions are presented, is that of a bill of exceptions, containing a brief summary of the proof certified by the trial judge; yet it is *evidence* of witnesses which is thus tendered for the consideration of the *court*, at least; and it has been the recognized rule of this tribunal to consider such statements for the purposes of the questions therein raised, with few exceptions.

This question was fully considered and well decided by this Court in Nelson's case, in which the following language was employed, viz:

" The prohibition to the exercise of the jurisdiction of this Court lies to its power to find pure questions of fact, such as were submitted to and found by the *jury*. The inhibition does not extend to the questions of law based upon the facts submitted to and determined by the *judge*. Of course this court could not review, under any circumstances, the verdict of the jury, on the facts found before them, on the trial of the accused." State vs. Nelson, 32 Ann. 845.

In a more recent case, this Court had under consideration a question quite similar to the one under discussion, and, in the course of a remarkably lucid opinion, they said:

" The test of the admissibility of the evidence is in the belief of the deceased that death is fast approaching; that he is, in other words, under a sense of impending dissolution, and his statements concerning the *res gestæ*, under the circumstances, are to be accredited under the law, as would his sworn testimony in ordinary cases. The question, therefore, as to whether the circumstances under which his statements are made, should entitle them to be received as though they were clothed with the sanctity of an oath, as with ordinary witnesses, is one of law blended with facts.

" The fact is, the condition of the deceased, as to his chances of recovery from the wounds received; and the question of law is, whether his

condition, *as shown by the evidence,* is such as to create upon his mind the belief of approaching death, under the effect of which his statements are to be received in evidence.   The solution of this problem is the exclusive province of this *court,* and not of the *jury,* and is, therefore, subject to our revision."   State vs. Trivas, 32 Ann. 1088.

It has been the constant practice of this Court to examine the testimony of witnesses, for the purpose of determining the admissibility of dying declarations.   State vs. Judge Spencer, 30 Ann. 361; State vs. Daniel, 31 Ann. 92; State vs. Keenan, 38 Ann. 660; State vs. Newhouse, 39 Ann. 862; 1 Greenleaf, § 158; State vs. Molisse, 36 Ann. 920; 1 Archibald, p. 140.

This being the settled rule of our jurisprudence, on the question of practice, on such collateral questions, it would seem to be a necessary corollary, that the defendant is entitled to have this evidence reduced to writing, for the purpose of having it annexed to a bill of exceptions, and brought up with the transcript, for our interpretation, and for the purpose of enabling us to correctly determine the question of law presented by the bill.

This precise question seems to have never been decided by us, but, in State vs. Nelson, in treating of the proper course to be pursued in case of a difference of opinion between counsel and the court, we said:

" The difficulty of a disagreement between the judge and counsel, as to the facts proved, may all be obviated by requiring the testimony to be reduced to writing, and, next, annexing it to a bill of exceptions, as a component part thereof; it being the clear duty of the judge, in case of motions for new trial, involving facts not submitted to the jury, to have such testimony put on record, at the instance of either party, as the same is to be weighed, *first* by the judge *a quo,* and *next* by the appellate tribunal."

The same line of thought was pursued in State vs. Trivas, on which we said:

" The second bill of exceptions retained by the accused, refers to the refusal of the district judge to cause to be reduced to writing the *whole* evidence of the two witnesses in connection with the dying declarations of the deceased.   He has caused to be written *that part* of the testimony which was intended as a basis for the introduction of the statement of Hanna, the victim, and nothing more was necessary."

In that case, the Court had no occasion to decide, whether a refusal by the judge, to permit the testimony intended to establish a basis for the introduction of the dying declarations, to be reduced to writing, was correct or erroneous, because he had caused the *material* part of same to

State vs. Seiley.

be reduced to writing, and to appear in the record, and "nothing more was necessary."

But, we take it to be a fair inference from the language quoted, that, had such a question been in the case, the Court would have held that the accused was so entitled, as of *right*.

It seems to be manifest, that, if we have the jurisdictional power to investigate the testimony applicable to collateral questions of law arising in a case, the testimony should be put to record, in some way, and incorporated into the transcript.

Then why should not the accused be entitled to the full benefit of such evidence ? And how could this be done, if he is not entitled to have it reduced to writing, and annexed to a bill ?

The trial judge can certify his remembrance of the salient facts adduced, but there may be others of equal importance to the accused, of which he might have no recollection at all. Can he be rightfully deprived of them ? Surely not. But, independent of mere reasoning on the subject, there is a substantial basis upon which the pretensions of the accused are founded, and it is this : this Court has a right to review the rulings of the district judge upon all questions of law arising upon collateral issues during the course of the trial of the accused, and to do so correctly and legally, it is entitled to have before it *all* the evidence upon which the judge below based his rulings in the premises.

But, this proposition may not be conceded, and, lest our opinion be thought to have taken too much for granted, we will treat it as *res nova*, and examine it accordingly.

The principle in controversy, in our opinion, rests upon the two following propositions, viz :

1. That the admissibility of dying declarations is a question for the *judge*, and not for the *jury*.

2. That this Court has *jurisdiction* to examine the evidence which is adduced before the trial judge, on collateral issues, in order to decide the questions of law raised on his rulings.

1. The elementary writers seem to be perfectly in accord on the subject.

Greenleaf, in discussing it, says:

"The *circumstances* under which the declarations were made, are to be shown *to the judge*, it being his province, and not that of the jury, to determine whether they are admissible." 1 Glf. sec. 160.

For this opinion he cites a large number of leading English and American cases, as authority.

Bishop says "their admissibility depends on the facts, to be ascer-

State vs. Seiley.

tained by the *judge* from evidence produced before him, that they were uttered in the solemnity of mind which proceeds from immediate—or impending—death. In passing on the question of fact, the *judge* will take into view the sayings and doings, etc." 1 Bishop Crim. Prac. sec. 1212.

Wharton says " the Court is to decide the question of the admissibility of the declarations, after a full examination of the facts adduced, and which, as far as they go to the question of consciousness of death, are always relevant. Consequently, the truth of the facts put in evidence, to show that the declarations were made in view of speedy death, is matter for the *Court;* and its decision on the facts it finds proven, is a matter of law, and may be reviewed." Wharton's Crim. Ev., sec. 297 ; Wharton's Homicide, sec. 768.

These opinions find ample support in the numerous cases cited by their authors.

In Dr. Thompson's recent treatise on trials, we find the following : " So, upon the question whether a declaration of a deseased person is competent as a dying declaration, in a trial of an indictment for murder, it is the duty of the Court to hear evidence by both parties, as to the circumstances under which the declaration was made, and thereupon to determine whether evidence of it is admissible or not." Thompson on Trials, sec. 327.

Ever since the Territorial Legislature of 1805 declared that "the method of trial, the rules of evidence, and all other proceedings whatsoever, shall be according to the common law," such has been the law of Louisiana, as it has been enforced in our jurisprudence ; and, notably, in our own opinions, as for instance, those in State vs. Trivas, *supra,* and State vs. Molisse, 36 Ann. 920, and State vs. Allen and Carter, 37 Ann. 688.

On this *consensus* of opinion we may safely rest our conclusions, on this point.

2. The basis of our authority on this proposition is the constitutional provision which confers on this Court "appellate jurisdiction * * in criminal cases on questions of law alone." Art. 81.

The same provision was incorporated, for the first time, in the Constitution of 1845, and it has been repeated in all others since. Prior to 1843, appeals were not permitted in criminal cases. During that year the Legislature established a Court of Errors and Appeals, for their review. The statute provided that that Court should "have, only, appellate jurisdiction, with power to review questions of law ; which questions shall be presented by bills of exceptions, taken to the opinions of the judge of the lower court, or by assignment of error apparent on

the face of the record, taken in the manner and form as now provided by law for appeals in civil cases."

In the course of the opinion of that court, giving an interpretation to that statute, it was said, in State vs. Adam, 8 R. 571 :

"But it is the duty of the appellant, under the penalty of having his appeal dismissed, to spread upon the record, so much of the testimony as will enable this Court to pronounce, with certainty, whether any error has been committed on the trial in the lower court.    *    *    *    A synopsis of the testimony, so far as is necessary for the elucidation of the point, should, or ought to be, contained in a bill of exceptions, thus enabling the Court of Appeals to act *knowingly* in the premises."

In State vs. Charlot, 8 R. 529, the Court, when again discussing the operation and effect of this law, stated their views even more concisely. They say :

"Questions of law are so frequently dependent upon the testimony, and so mingled with the facts, that it would, in many instances, be difficult to disconnect them.    What would be a correct exercise of the legal discretion of the (lower) court, upon *one* set of facts, would, on a *different* hypothesis, when the mass of testimony was of a contrary and different complexion, constitute such a perversion of the legal discretion, as imperiously to require the intervention of this Court.

"Hence the rule adopted in New York, requiring a *case* to be made, appears to this Court a salutary and wise rule.    Otherwise, in many instances, from the *baldness* of the bill of exceptions, this Court could not be sufficiently enlightened to ascertain, with certainty, whether the judge had wisely exercised his discretion or not; and it will scarcely be denied, that as much injury may be inflicted upon the accused, by an improper exercise of this discretionary power, as by the erroneous decision of any point of law which may arise during the trial.    *    *    *

"But to enable this Court to extend relief, it is evident that a *case* must be made, and embodied in a bill of exceptions, by which the *merits* of the decision of the inferior court may be tested.    Without this, however erroneous may have been the judgment of the lower court, thi court, not having the means of pronouncing *scienter* in the premises, would be obliged to refuse relief."

In the light of these decisions, the objects and purposes to be accomplished by the creation of the Court of Errors and Appeals are manifest; and the method of procedure in the prosecution of appeals thereto is distinctly pointed out.

The Constitution of 1845 having been adopted, the Act of 1843 was therefore repealed, and in lieu thereof the Act of May 31, 1846, was

passed, one of the provisions of which was that appeals in criminal cases might be carried to the Supreme Court, "as in civil cases."

In placing an interpretation upon that act our predecessors said, in State vs. Fant, 2 Ann. 837: "The Constitution confers appellate jurisdiction on this court "in criminal cases on questions of law alone.' Article 63. These questions should be presented by bills of exception, or assignments of error. The practice, in this respect, stands unaffected by the repealing statute of 1846, and the necessity for observing its results, as a necessary consequence, from the constitutional limitation of the jurisdiction of this court to questions of law, alone."

That case was followed by that of State vs. Brown, 40 Ann. 505, in which the opinion quoted was strongly re-enforced, the court employing the following language, viz:

"It is well settled in courts of common law that *error* will not lie upon what is matter of discretion in a court; and it follows that in order to enable a court of *appeal* to determine whether a decision of a *judge* of first instance is, or not, within the legal discretion vested in him, *all the facts* which are material to the discussion, must be presented, in order to enable the appellate court to determine on the legality of the decision on which its judgment is sought."

Such was the settled construction which was placed upon the Statute of 1843, first, and on the Constitution of 1845, afterwards; and it remained undisturbed by any contrary opinion until the year 1850. But during the following twenty years it was modified by differing decisions of this Court, so it became a rule equally well established, that it would examine *no* question of fact which appertained to the exercise of any *dis-cretion* on the part of the trial judge, especially with reference to the granting of continuances, and the allowance of new trials, holding that its jurisdiction in criminal cases only extended to "*unmixed questions of law.*"

This interpretation was pushed to the extremity of holding, in several cases, that a bill of exceptions detailing the evidence adduced before the trial judge, to serve as a basis for the introduction of dying declarations, "presented questions of fact, and not of law, alone," and for that reason the court declined to consider it and decide the question of law it tendered. State vs. Ross and Rogers, 18 Ann. 340.

Soon after the organization of this Court, under the Constitution of 1879, containing the same provision as that of 1845, the case of State vs. Nelson, cited *supra*, came up for consideration, in which, after citing numerous decisions of our predecessors, we said:

"Had that jurisprudence absolutely consecrated the doctrine that the

Supreme Court has no power to revise such ruling under any contingency, even when the facts are embodied in a bill of exceptions, we would unhesitatingly decline to countenance it, and would repudiate such doctrine, however ancient. * * * The actions and rulings of judicial officers, presiding over the trial of cases in which the lives and liberties of persons are at stake, should *always* remain open to criticism, revision and correction by the superior legitimate authority, in proper cases."

By many, this Court was supposed to have taken, in that case, a new departure, but, it is submitted, on the authorities we have cited, that it was only a return to the ancient landmarks of jurisprudence.

Ever since that opinion was handed down, it has been *the* leading case on that question, and the doctrine therein announced has been applied, with practical unanimity, in all cases decided thereafter, and in which it was involved; and, among the number, the following may be cited, viz: State vs. Given, 32 Ann. 782; State vs. Redd, do 819; State vs. Ross, do 854; State vs. Hudson, do 1052; State vs. Trivas, do 1086; State vs. Briggs, 34 Ann. 69; State vs. Chatman, do 881; State vs. Bartly, do 149; State vs. Riculfi, 35 Ann. 770; State vs. Jackson, do 760; State vs. Beldin, do 823; State vs. Highland, 36 Ann. 87; State vs. Miller, do 158; State vs. Molisse, do 920; State vs. Reddin, 37 Ann. 780; State vs. Ford, do 443; State vs. Deas, 38 Ann. 581; State vs. Wire, do 684; State vs. Kernan, do 660; State vs. Newhouse, 39 Ann. 862; State vs. Waggoner, do 919; State vs. Hubert, do 319; State vs. Allen and Carter, 37 Ann. 688; State vs. Dorsey, 40 Ann. 740; State vs. Wilson, 40 Ann. 75. *Vide* Section 9, Act 98 of 1880.

If *any* question can be considered as settled by the *might* of authority, it is submitted that the one under present consideration has been by those enumerated.

Having, as we confidently believe, clearly proven the correctness of the two propositions as announced *supra*, the remaining duty is to state the legal conclusion which is deducible therefrom, and that is:

Having the constitutional power to decide questions of law arising in criminal cases, and the right to examine evidence adduced in aid of such decision, we have the corresponding legal right, and constitutional authority to designate the *mode* in which our jurisdiction may be exercised.

The accused was entitled, as of right, to have the testimony of the witnesses designated reduced to writing, and annexed to a bill of exceptions and brought up with the record. This is a wise and conservative rule, and it will equally protect the rights of the State and those of the accused, and it meets our unqualified approval.

This ruling will necessitate the removal of the judgment and sentence, and the remanding of the case.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury, and the judgment and sentence thereon pronounced, be set aside, and that the cause be remanded to the court below for a new trial according to law, and the views herein expressed.

## DISSENTING OPINION.

FENNER, J.    The first bill of exceptions recites, in substance, that when the District Attorney was proceeding to offer in evidence the dying declaration of the person killed, counsel for defendant objected, on the ground that the said declaration had not been made under a sense of impending dissolution ; that, thereupon, the District Attorney was proceeding to call witnesses to prove the facts necessary to serve as a basis for admitting the declaration, when counsel for defendant moved the court to open a note of evidence, and to reduce the testimony on this point to writing, so that the ruling of the court upon the question of admissibility, being a question of blended law and fact, might be reviewed by the Supreme Court on appeal; but the judge refused to open a note of evidence or to have the testimony taken in writing, and proceeded to hear the evidence and, after hearing it, admitted the declaration, to which rulings the defendant objected and took this bill of exceptions.

The judge assigns as his reasons that " the court is not aware of any law requiring the evidence to be taken down in writing in such cases, and refused the request, for the reason that it was a useless consumption of time, and because the counsel for defendant had ample opportunity to incorporate the facts in a bill of exceptions, which they have not seen fit to do, although they took the precaution to state the facts in writing in the exception book, on which they rely."

The judge then proceeds to state the evidence and his conclusion that, at the time of making the declaration, it established that the declarant was under the sense of impending dissolution.

The judge correctly states that there is no law requiring such evidence to be taken down in writing.   The statute book will be searched in vain for any such law.

This Court, long ago, after stating the notorious fact that "testimony is never taken down by the clerk in criminal cases," adds that "the Articles of the Code of Practice, which give to either party the right to require the clerk to take down the testimony in civil cases, are not applicable to appeals in criminal cases."   State vs. Henderson, 13 Ann. 491; State vs. Beneger, 14 Ann. 465.

There is no other statute expressly or impliedly giving such right.

If this evidence had been reduced to writing and were properly brought up before us, we would have no right to reverse the findings of the judge, as to its weight or sufficiency. The constitution limits our jurisdiction in criminal cases to " question of law alone." Act 81.

Prior to the Constitution of 1845, there was no constitutional provision regulating appeals in criminal cases. Under the legislative provisions on that subject, the court of criminal appeals had assumed jurisdiction to pass on questions of fact when blended with questions of law. To put an end to this practice, the Constitution of 1845 expressly and emphatically restricted the appellate jurisdiction to " questions of law *alone.*"

Under this provision this Court, as organized under that constitution, uniformly held that questions of fact arising in the course of a trial before the jury in a criminal case, whether addressed to the jury or to the judge alone, are not reviewable in this Court. We are to take the facts as found by the judge and can only inquire whether he has applied the law correctly to those facts. We have no jurisdiction over questions of fact, and, therefore, no power to review the findings of judge or jury on such questions.

This doctrine has been applied to the very question now before us, in a case where a dying declaration was objected to on the ground that it was not made under a sense of impending dissolution, and this Court said : " The physical and mental condition of Jordan, at the time of the declaration is a question of fact over which this Court has no jurisdiction." State vs. Bennett, 14 Ann. 652.

So in a case where the question of sanity of the prisoner was involved, the Court said : "The affidavits present a mere question as to the sanity of a prisoner which is a mere question of fact and not of law, and we cannot assume jurisdiction over it." State vs. Haase, 14 Ann. 79.

In another case the Court said : " By the well known rule of criminal proceedings, the evidence introduced on the trial is not reduced to writing, and if it was, we would be without authority to pronounce upon it." State vs. Frank, 2 Ann. 837 ; State vs. Crawford, 32 Ann. 527.

Mr. Wharton lays down the rule applicable to the question now before us as follows: " The Court is to decide as to the admissibility of the declaration. The *truth* of the facts, put in evidence to show that declarations were made in view of speedy death, is matter for the Court, and its decision on the facts *it finds proven,* is matter of law and may be reviewed." 1 Whart. Cr. Pr. § 688, citing many authorities.

The doctrine is well put by the Supreme Court of North Carolina, as follows : " The *case on appeal, as settled by the trial judge,* must be ac-

cepted by this Court as imparting absolute verity for all purposes of correcting errors assigned." State vs. Debham, 3 S. E. Rep. 742.

Our own Court has held as follows: "Where prior confessions are inadmissible because unduly obtained, the district judges have the power, it seems, to infer that the improper influence has ceased to operate from lapse of time or other cause. And their action on such a point cannot be reviewed, unless the bill disclosed some errors of law." State vs. Hash, 12 Ann. 894.

The futility of bringing before us the evidence in such cases is illustrated by the constant recognition of the right of the judge to believe or disbelieve it, which was ruled as late as in Ford's case, where we said in reference to a question of the admissibility of evidence of threats: "In passing on such a question, the trial judge must necessarily be clothed with authority to decide whether a proper foundation has been laid for the proffered evidence, and that authority necessarily includes the discretion to ignore and not to consider testimony which his reason refuses to believe." State vs. Ford, 37 Ann. 461; State vs. Hunt, 4 Ann. 438; State vs. Long, ib. 441.

It may be stated as beyond contradiction that under previous Constitutions confining the jurisdiction of this Court in criminal cases to "questions of law alone," the jurisprudence of this Court, conforming to that of every other court of like jurisdiction, had been constant and without variation that questions of fact, however arising, were outside its appellate jurisdiction, and that it could only review decisions on blended questions of law and fact, by accepting the facts as found by the judge and determining whether his application of law to those facts was or was not correctly made. 4 Ann. 505; 6 Ann. 311, 593, 651; 7 Ann. 47, 122, 531; 8 Ann. 114; 10 Ann. 401; 11 Ann. 81, 422, 479; 14 Ann. 79, 673, 785; 20 Ann. 236; 22 Ann. 9; 23 Ann. 149; 26 Ann. 333; 30 Ann. 365.

The cases and authorities quoted in the majority opinion as indicating a contrary view, when critically examined, will be found to confirm, and not to contradict, this uniform course of ruling.

When under this inveterate jurisprudence, the Constitution of 1879 embodied the same restriction on the appellate jurisdiction of this Court, it may have been fairly presumed that a similar interpretation thereof would be made. Nevertheless in Nelson's case, 32 Ann. 842, this Court guardedly held: "This Court has authority to consider the facts established on a motion for new trial, when they are such as were not submitted to and passed on by the jury, but were considered and decided by the judge only. * * The difficulty of a disagreement be-

tween the judge and counsel as to the facts proved may well be obviated by requiring the testimony to be reduced to writing and annexed to a bill of exceptions as a component part thereof, it being the clear duty of the judge in cases of motions for a new trial, involving facts not submitted to a jury, to have such testimony put on record at the instance of either party, as the same is to be weighed, first, by the judge *a quo*, and next, by the appellate tribunal."

Although the decision contained some broader *dicta*, this was the only question before the court.

If confined to rules for new trial and to like proceedings entirely outside and independent of the trial before the jury, the decision, although contrary to all former precedents of our own and other courts vested with appellate jurisdiction on " questions of law," may operate without substantial injury.

But when it is proposed to extend the same doctrine to proceedings arising in the course of the trial before the jury and to review the findings of the judge on questions of fact the determination of which is necessarily confided to his discretion as a basis for his rulings on the admissibility of testimony, it is time to call a halt.

The facts upon which such rulings are made are often facts which have already gone to the jury in the course of trial. They are, still more often, facts which are proper for the jury.

In this very case, it does not appear that the evidence sought to be reviewed was not given before the jury; for, while the facts and circumstances surrounding a dying declaration are within the exclusive cognizance of the judge as far as the question of the admissibility of the declaration is concerned, they go properly to the jury also as matters affecting the weight and value of the declaration. So says Mr. Greenleaf : " The circumstances under which the declarations were made are to be shown to the judge ; it being his province, and not that of the jury, to determine whether they are admissible * * But after the evidence is admitted, its credibility is entirely with the jury, who *of course* are at liberty to weigh all the circumstances under which the declarations were made, *including those already proved to the judge*, and to give the testimony only such credit as, upon the whole, they may think it deserves. 1 Greenleaf Ev., Sec. 160. 2 Starkie Ev., p. 263.

If we may review decisions upon questions of fact of this kind, the restriction of the Constitution confining our jurisdiction to " questions of law alone," is rendered in large measure inoperative. There is no precedent for such a practice unless the case of Trivas, 32 Ann. 1056, be so considered ; but there we simply overruled an exception to the re-

State vs. City.

fusal of the judge to have the evidence taken down in writing because we said "he had caused to be written that part of the testimony which was intended as a basis for the introduction of the testimony." This involved no necessary recognition of the right claimed, but only said to the claimant, you have no cause of complaint, because the right claimed was accorded to you.

I apprehend that the present ruling will introduce great difficulty and confusion in the administration of criminal justice, owing to the variety and multitude of questions of this kind arising in the course of criminal trials. Often the decision of the judge as to the foundation having been laid for proffered evidence must be based on evidence previously taken in the course of trial. How is his appreciation of such evidence to be reviewed by us and the correctness of his ruling to be determined? Can he be required to recall the witnesses and have their testimony taken over again and reduced to writing? Or, inasmuch as no one can foretell what particular evidence, taken on the trial may fall under the consideration of the judge as a basis for his future rulings, would it not be the logical outcome to require all testimony to be taken in writing as it is given? By this means alone could we securely provide for subjecting all his rulings to review, if we are to review his decisions on questions of fact as well as law?

I dissent.