The opinion of the court was delivered by
Breaux, J.
The defendant, Leon Compagnet, was indicted by the grand jury of Calcasieu on the 9th day of September, 1896, for the alleged murder of Henry Cuicheney, in that parish, on the 28th day of May, 1896.
He was put on his trial on the 22d day of September, 1896.
On the 28th day of that month the jury having failed to agree on a verdict, it was discharged, and a mistrial entered.
The case was reassigned, and on the 1st day of October, 1896, he was put on his trial a second time, and was convicted of manslaughter, and his punishment was assessed by the trial judge at ten years in the penitentiary. He reserved a number of bills of exceptions; eight of these bills of exceptions present the same point, and are argued by the appellant as one bill of exception.
The first bill of exception was taken to the court’s ruling in refusing to decide that a juror who had conscientious scruples against the infliction of the death penalty was an incompetent juror. The juror while being examined on his voir dire was asked by counsel for defendant whether he had conscientious scruples against the infliction of the death penalty. The prosecuting attorney did not challenge him, and the juror did not request to be excused. It therefore follows that the defendant had no legal cause to assign against this juror sitting in the cause. His rights were not prejudiced, and no error was committed of which he can complain. State vs. Kennon, 45 An. 1192; State vs. Taylor, 44 An. 783.
It is a sufficient ground of challenge by the prosecuting officer that a juror declares on oath, in answer to questions, that he has conscientious scruples on the subject of capital punishment.
It is also a sufficient ground to excuse a juror who on oath informs the court of his conscientious scruples. But the right ends here. The defendant has never been accorded this challenge for cause as a right under any of the decisions of this court. It has been decided by a court of another jurisdiction that the juror had no ground for excuse from serving as a juror; that it was a, cause for challenge which the prosecuting officer might *1472 invoke, not the juror. Thompson and Merriam on Juries, par. 202.
The decisions of this court, however, to which our attention is directed, do not thus limit the right, for it is held that a juror may for that cause be excused on his own motion.
This court, however, has never decided (on the motion of the accused and at his instance alone) that it was a good cause of challenge.
The remaining' grounds of objection are to the ruling of the trial judge sustaining objections to the admissibility of evidence of threats, communicated and uncommunicated, of character of the deceased for danger and desperation.
The evidence of the case to the stage of the trial, at which the offer to introduce testimony of threats and of the character of the deceased was made,- was not reduced to writing. The court excluded evidence of threats and character of the deceased (offered on examination of the defendant’s witnesses) on the ground that the proper basis had not been laid — in other Words, that the alleged overt act had not been sufficiently shown.
Taking up for review the testimony on this point, made part of the bill of exception, we find that the first witness for the defendant' (whose testimony is reduced to writing) testifies that the deceased,' Guicheney, who appeared angry, passed him, walking rapidly in the! direction of an alleyway. He motioned with his hand toward the accused, and the accused also made some motions of the hand. The accused stepped into his restaurant; the deceased stood at the entrance to the alleyway. He (deceased) jumped into the alleyway and immediately after the witness heard two shots. David Rich-! mond, another witness, testifies that about ten minutes before the shooting he delivered a message from Guicheney to the accused. >
■ This witness was sitting oti the steps of the Royal Saloon, about two feet from the alley. The accused, he says, cursed the decease's!, and said to him to come on. The former left the chair Where he was sitting, and went into the restaurant. The accused came out of a side door of his restaurant into the alleyway, and stood about two' feet from his,door; about that time the deceased stepped into-the alleyway. The accused asked him what message he had sent' him by this witness (Richmond). To which the deceased answered ' that it was none of the business of the accused. The latter said so'mething’ in French, which the' witness • did not' understand; h'e (accused).' *1473 pulled out his pistol; Guicheney (the deceased) was coming toward him; he (accused) motioned to him with his left hand, with his palm extended outward. Guicheney tried to catch the pistol; after seeing he could not catch it he turned sideways, and the accused shot him twice.
W. H. Smith, another witness, testifies that at the time of the shooting the defendant, Compagnet, was still in front of the side door of his restaurant; the deceased was approaching, and was at a distance of three or four feet. Immediately before shooting, the accused raised his left hand, and motioned toward the deceased, and said something that the witness did not understand. The deceased advanced with his left hand up, and his right hand by his side. He was dressed in undershirt, pants and apron. The defendant Compagnet, as a witness in his own behalf, testifies that the deceased cursed him, and said he would “ break his mouth.” To which he (defendant) answered “you can come.” He left the front of his restaurant, stepped inside, armed himself with a pistol, and stepped out into the alley, at the entrance of which the deceased was standing with one hand on a post; he said to him: “What do you mean by sending me such a dirty message by the boy?” to which deceased replied: “The message does not concern you.” The deceased then advanced somewhat rapidly, saying at the same time, “You son --I’ll kill you, and I’ll finish you to-day.” “Guicheney (testified the witness) rushed at me and I shot him twice.”
The theory on the part of the State and that on the part of the defence are at variance.
The theory of the defencefis, that the deceased was a strong, muscular man; that he was quarrelsome, violent and dangerous; that instantly before the homicide he was advancing on the accused in a private alleyway, showing a determination to carry out his threat to kill the accused; that the latter motioned with his left hand toward the deceased not to advance.
The theory of the State, on the other hand is, that the accused invited the difficulty, and that he was advancing on the deceased at the time of the homicide, and that in consequence there was no evidence indicating an overt act, and no foundation was laid to admit the testimony offered.
Waiving the State’s theory for the present, and giving consideration only to the theory of the defendant, we do not find that on the *1474 particular point of laying a foundation to admit the testimony offered, it is supported by sufficient testimony.
The testimony of the defendant annexed to the bill does not show that there was (as alleged by defendant) threat made to kill him about fifteen minutes before the conflict, as alleged.
The message, which the defendant says included a threat of intent to kill, was unquestionably provoking, insulting and obscene.
But it was not an expression of an intention to take life. Although very aggravating, it was not a menace (sent as it was by a mere boy), evincing a design to commit a possible act. Moreover, directly before the homicide, in answer to a question of the accused, deceased said that the message did not concern him. It was not relevant testimony, and as it was irrelevant, it was properly excluded.
With reference to the character of the deceased as a violent man and his strength, the testimony made part of the bill by the defendant, indicates that the quarrel was engaged in by both the deceased and the accused. Secondly: It does not reveal that the accused had retreated as far as he could with safety. Thirdly: Nor does it disclose that he was at the time in danger of being killed or of suffering great bodily harm. Without testimony of some weight denoting such an overt act, under our jurisprudence, in our opinion, a sufficient foundation is not laid to justify the admission of proof of character.
It has been decided that whether a proper foundation has been laid for such evidence as here offered, is for the trial court to decide, “ whose rulings will not be reversed unless manifestly erroneous.” State vs. Ford, 37 An. 443; State vs. Janvier, Ib. 644; State vs. Christian, 44 An. 950. Conceding, for the moment, that the position of the defendant is correct, and that the only testimony which should be considered is that of which we have before given a summary, it does not appear to us that the ruling of the trial judge, on the point here involved, was manifestly erroneous.
But reverting to the State’s theory, “ that the combat, or invitation to the combat, was mutual and the accused was advancing on the deceased,” as stated by the trial judge after having heard all the evidence, under the circumstances of this case we do not think that we should entirely ignore the statement. It was the best evidence obtainable in view of the fact that all of the witnesses for the State had been examined when the motion was made. A motion timely *1475 made, so as to enable the State to have the testimony of the overt act written, would present a different question. As it was, we have not found in this case that the Statute 113 of 1896 applies.
In considering either theory (the defendant’s or the State) it does not appear to us that the ruling of the District Judge was error.
The judgment is affirmed.