(116 So. 391)

No. 28982.

## STATE v. JEFFERSON.

March 12, 1928.

*(Syllabus by Editorial Staff.)*

1. **Homicide** ⬤➾190(4)—**Evidence of communicated threat by deceased to accused held properly excluded, where no proper foundation had been laid.**

In murder prosecution, where defendant testified he stepped out of his restaurant and deceased approached him from behind and struck him and he turned and struck deceased and shot him as he started to draw his pistol, sustaining objection to question whether before difficulty any one told him that deceased had threatened to kill him, was not error, since no proper foundation for it had been laid by showing a hostile demonstration or overt attack by deceased towards accused at the time or immediately preceding the killing.

2. **Witnesses** ⬤➾405(1)—**Excluding evidence of difficulty between deceased and third person, thereby attempting to impeach witness on irrelevant matter, held proper.**

In murder prosecution, excluding evidence as to difficulty between deceased and a third person on night preceding night of killing, offered to impeach state's witness, *held* proper, since testimony related to a collateral or immaterial matter.

3. **Witnesses** ⬤➾405(1)—**Witness cannot be cross-examined as to collateral or irrelevant matter merely to contradict him by other evidence.**

A witness cannot be cross-examined as to a collateral or irrelevant matter merely for purpose of contradicting him by other evidence.

4. **Homicide** ⬤➾174(7)—**Testimony as to defendant's flight immediately after homicide held admissible.**

In murder prosecution, overruling defendant's objection to admissibility of testimony relative to his flight immediately after the homicide was not error.

O'Niell, C. J., dissenting in part.

Appeal from Eight Judicial District Court. Parish of Caldwell; F. E. Jones, Judge.

Stanley Jefferson was convicted of murder, and he appeals. Affirmed.

C. P. Thornhill, of Columbia, for appellant.

Percy Saint, Atty. Gen., Harry Fuller, Dist. Atty., of Winnfield, and E. R. Schowalter, Asst. Atty. Gen., for the State.

BRUNOT, J. Stanley Jefferson was indicted for the murder of Albert Gibson. He was tried by a jury, a verdict of "guilty as charged without capital punishment" was returned against him, and he was sentenced to serve in the Louisiana State Penitentiary, at hard labor, for the remainder of his life. From the verdict and sentence he appealed. There are five bills of exception in the record.

[1] Bill No. 1 was reserved to a ruling by the court sustaining an objection by the state to the admission of testimony relative to communicated threats made by the deceased against the defendant.

The defendant, while on the stand as a witness in his own behalf, testified that he had stepped out of his restaurant for a necessary purpose; that the deceased approached him from behind and struck him a blow on the back of the head; that he turned and struck the deceased with his fist; the latter then started to draw a pistol from the bosom of his shirt, whereupon defendant drew his pistol and shot the deceased. After this testimony had been given the defendant was asked the following question:

"Now then, before this difficulty, during the day of Sunday or afternoon, did any one tell you that Albert Gibson had said that he was going to kill you that night?"

The state objected to the testimony sought to be elicited by the question for the reason that no hostile demonstration or overt act on the part of the deceased had been shown; that the testimony was not a part of the res gestæ; that it was irrelevant; and that the proper foundation for its admission had not been laid.

We think the judge's per curiam to this bill disposes of it. It is rather verbose, but we prefer not to delete it. The judge says:

"The court refused to permit Stanley Jefferson to testify that Quince Torian had informed him that Albert Gibson had threatened his life for the following reasons: There had been shown no hostile or overt act on the part of. the deceased. There were eight eyewitnesses who had testified for the state and they all agree in their statement that Albert Gibson was some 20 or 40 feet away from the restaurant near where he was killed and was conducting himself in an orderly way. That they saw Stanley Jefferson, the defendant, come out of the restaurant and begin to look around as if he was looking for some one. Then he immediately made his way to Albert Gibson, cursed him, and inquired why he was out there, and the defendant then hit the deceased twice and the deceased never did hit the defendant. Then the defendant pushed the deceased back with one hand and shot him. The deceased immediately fell to the ground and the defendant went into the restaurant. The bullet from the gun passed through the deceased's head. All of these witnesses testify that the deceased did nothing, had no gun, and made no attempt towards the defendant. It was not shown by the testimony of any witness that there was a pistol on the person or near the deceased and none was found there. The defendant is the only one that made such statements that the deceased had a pistol and that the deceased attempted to take the life of the defendant. This testimony by the defendant was offered for the purpose of mitigation. There was no question from the great preponderance of the evidence that the defendant was the aggressor and that the deceased made no hostile act toward the defendant, and under the jurisprudence of this state the above testimony was not admissible.

"Again, Quince Torian was not present in the court and the defendant did not offer him to testify to these facts, and if such testimony was admissible it should have been testified to by the party to whom it is contended the deceased made these threats known, and it would partake of the nature of hearsay testimony for the defendant to testify to the above statement. For these reasons the court refused to permit. the testimony."

The record shows that a subpoena was issued for Quince Torian by both the state and the defendant, and that his absence was not attributable to laches on the part of either; but solely to the sheriff's inability to locate the witness. Moreover, as the testimony sought to be elicited from the defendant was objected to upon other grounds than the competency of the witness to give it, the absence of Quince Torian, at the time of the trial, is of no consequence.

The question which the bill presents is whether evidence of communicated threats is admissible before the proper foundation for its admission has been established to a reasonable degree by proof of a hostile demonstration or overt attack by the deceased towards the accused at the time or immediately preceding the killing. This question has been answered in the negative by this and the courts of the other states of the Union many times. There are a few exceptional cases in the books, where, because of the established special facts and unusual circumstances surrounding them, the courts, in the abundance of precaution, have relaxed the general rule, but, in cases such as the one before us, the jurisprudence seems to be fixed and the rule is applied whether testimony as to communicated threats is offered in justification or merely in mitigation.

"In determining whether a proper foundation has been laid, by proof of an overt act or attack by the deceased or by the accused, for the introduction of evidence of the bad and dangerous character of the deceased and of previous communicated threats made by him against the accused, the trial judge is vested with the legal discretion of refusing to believe one or more witnesses and to ignore their affirmative testimony, if, in his opinion, not arbitrarily, he believes that the reverse is true." State v. Ford, 37 La. Ann. 443; State v. Kervin, 37 La. Ann. 784; State v. Jackson, 37 La. Ann. 896; State v. Spell, 38 La. Ann. 22; State v. Tucker, 38 La. Ann. 540; State v. Duffy, 39 La. Ann. 420, 2 So. 184; State v. Seiley, 41 La. Ann. 154, 6 So. 571; State v. Demareste, 41 La. Ann. 618, 6 So. 136; State v. Mitchell, 41 La. Ann. 1074, 6 So. 785; State v. Christian, 44 La. Ann. 954, 11 So. 589; State v. Harris, 45 La. Ann. 846, 13 So. 199, 40 Am. St. Rep. 259; State v. Stewart, 45 La. Ann. 1166, 14 So. 143; State v. Nash, 46 La. Ann. 210, 14 So. 607; State v. Barker, 46 La. Ann. 804, 15 So. 98; State v. Beck, 46 La. Ann. 1421, 16 So. 368; State v. Green, 46 La. Ann. 1523, 16 So. 367; State v. King, 47 La. Ann. 30, 16 So. 566; State v. Vallery, 47 La.

Ann. 183, 16 So. 745, 49 Am. St. Rep. 363; State v. Compagnet, 48 La. Ann. 1474, 21 So. 46; State v. Kellogg, 104 La. 599, 29 So. 285; State v. Perioux, 107 La. 606, 31 So. 1016; State v. Golden, 113 La. 802, 37 So. 757; 26 Cen. Dig., Homicide, par. 394; State v. Bouvy, 124 La. 1054, 50 So. 849; State v. Miller, 125 La. 254, 51 So. 189; State v. Davis, 127 La. 263, 53 So. 558; State v. Reeves, 129 La. 714, 56 So. 648; State v. Harris, 131 La. 616, 59 So. 1009; State v. Varnado, 131 La. 952, 60 So. 627; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Bryan, 138 La. 338, 70 So. 318.

In the Golden Case, 113 La. 802, 37 So. 761, Mr. Justice Monroe, the organ of this court, who thereafter became its Chief Justice, said:

"It is true that this court has repeatedly decided (though the writer of this opinion has held to a different view) that it is for the trial judge, and not for the jury, to determine whether an overt act by the deceased immediately preceding the killing has been sufficiently proved on the trial of the person accused of the homicide to open the door to evidence of prior difficulties between such accused and the deceased, and of prior threats, and of the dangerous character of the deceased. In fact, the jurisprudence on this point is so firmly established that the remedy, if remedy is required, should be sought in the General Assembly."

'Bill No. 2 presents the same question, with a slight but immaterial variance in form, as bill No. 1, and, for the reasons stated in our consideration of that bill, we think this one is also without merit.

[2] Bill No. 3 was reserved to a ruling of the court sustaining an objection by the state to the introduction of testimony, by way of cross-examination of a state witness, relative to a difficulty between the deceased and a person other than the defendant on the night preceding the night of the killing. The substance of the judge's per curiam to the bill is that the testimony was irrelevant and immaterial and was an attempt, by the defendant, in an indirect way, to get inadmissible testimony before the jury. Counsel for the defendant does not pretend that the testimony was relevant to any fact of the case on trial, but says that it was offered for the purpose of impeaching the witness, and he contends that it was admissible for that purpose.

[3] It is the recognized and consistently observed rule that a witness cannot be cross-examined as to a collateral or irrelevant matter merely for the purpose of contradicting him by other evidence. State v. Cox, 136 La. 1008, 67 So. 107.

Bill No. 4 presents the same question, but in a slightly different way, that is presented in bill No. 3, and, for the reasons stated in our consideration of that bill, we find no error in the ruling complained of.

[4] Bill No. 5 was reserved to the overruling of defendant's objection to the admissibility of testimony relative to the flight of the defendant immediately after the homicide. This objection is without merit. State v. Nash, 115 La. 719, 30 So. 854.

Finding no error in the rulings of the court or patent on the face of the record, the verdict and sentence appealed from are affirmed.

O'NIELL, C. J., dissents from the ruling on bills Nos. 1 and 2.