*1032 The opinion of the court was delivered by
Nicholas, O. J.
The defendant indicted for murder, having been tried and convicted of the crime and sentenced to be hung, has appealed. His hope of reversal rests on two bills of exception.
The first is as follows: Be it remembered, that on the trial of the above entitled and numbered cause evidence having been admitted to show that just previous to the homicide accused had been violently struck over the head by a person other than the deceased and that thereupon accused went quickly to his house, some three or four acres from where the assault took place, and, arming himself with a gun, was returning to where he was assaulted, and that on his way deceased attempting by friendly means to prevent him from going there — accused having warned deceased not to approach him, and deceased, in disregard of this warning, having continued toward the accused, the latter shot and killed him. H. N. Wallis, Jr., and J. C. Briant, of counsel for defendant, asked the court to give the following special charges to the jury:
1. “That an illegal attempt to restrain a man’s liberty, even under color of legal process, is such provocation as to reduce the offence to manslaughter. This holds where a man is injuriously restrained of his liberty, as where a creditor stood at the door of his debtor with a drawn sword to prevent him from escaping while he sent for a bailiff to arrest him, or where a sergeant put a common soldier under arrest, who thereupon killed the sergeant with a sword, and upon the trial the articles of war were not produced, nor any evidence given of the usage of the army, and so no authority in the sergeant appeared.”
2. “Where the defendant having been violently beaten and abused, made his escape, ran to his house eighty yards off, got a knife, ran back, and on meeting with the deceased stabbed him, it was held but manslaughter.”
“And the court having refused togive such special charges on the ground that he would thereby comment upon the facts of the case, the said H. M. Wallis, Jr., and J. C. Briant, of counsel for the defendant, did thereupon reserve this bill of exception to the ruling of the court, which bill being submitted to opposite counsel and found correct was duly granted and signed in open court.”
The court stated as to this bill that “ both charges were refused because even if absolutely correct in point of law the facts of the case *1033 did not warrant either of them. The evidence bearing on the killing of the deceased, Geo. Bisland, was that the accused had some difficulty with one Labit at a plantation store. As to the origin of this difficulty there was contradictory evidence. Some witnesses testify that Labit and the accused began tussling in fun; that Labit requested the accused to desist and behave; that accused did not desist, and in their tussling they both fell down the gallery of the store; that Labit claimed the accused had struck him first. After they fell off the gallery some of the accused’s friends started to take him (accused) away from the store, Labit came up with a friend, both armed with axe handles. That some of the accused’s friends requested them to go away; that Labit said he would strike him (the accused’s friend) if he did not look out; that thereupon accused’s friend turned the accused loose and Labit began striking the accused over the head with the axe.handle, whereupon a struggle ensued in which the accused succeeded in wresting from Labit the axe handle, when Labit ran back towards the store, the accused pursuing. Labit secured himself in the store and accused threw down the axe handle and started towards his house in the quarters, some three or four acres off. Some witnesses say he walked fast; others that he went in a dog trot.
“He was covered with mud and blood which flowed from gashes in his head, his wife followed, screaming and calling out for some one to go into the accused’s house and take his gun from there so the accused could not get it. One or two men went into the house ahead of the accused and looked for the gun, but.not finding it came out again. The accused went into the house and came out with the gun and started along the road in the quarters of the plantation towards the store. His wife and others called out to the men in the quarters to stop the accused, to prevent him from going to the store, as he would shoot Labit with his gun. As he neared George Bis-land’s house, George Bisland stepped off his gallery and walked towards the accused, saying to him: Brother Prank, don’t do that, listen to me and go back with your gun. The accused ordered him to stand back, saying he would kill any son of a bitch who laid his hand on him. George Bisland, the deceased, continued on, walking toward him, talking to him in a persuasive way and trying to dissuade him from proceeding further with his gun. When they got within three or four feet of each other, the accused again told him to stand back *1034 and he snapped one barrel of his gun on him. George Bisland kept on talking to him in a persuasive manner and advancing on him, when accused stepped back a step or two and fired a fatal shot into the lower abdomen of George Bisland. George Bisland then grabbed the barrel of the gun and continued entreating the accused to desist from his intention of going to the store with his gun. The accused called out to him to let go the gun, and a struggle ensued for the gun in which the accused struck the deceased on the forehead. At this time a woman came to George Bisland’s assistance, and the accused, the gun having been freed from the hold of Bisland, struck her with the gun and kicked at her. At this time it was discovered that George Bisland’s clothes were on fire and that he was shot and wounded. The accused then went back to his house, and coming out was seen to go through motions as if reloading the gun (a breach-loading gun), and he went back to the front of the store where he had been beaten with an axe handle and inquired for the man, evidently meaning Labit.
“Under the above state of facts the court refused to give the first special charge asked, because there had been no restraint used by the deceased, who was, on the contrary, peaceably engaged in the laudable attempt to dissuade a friend from committing a felony; and the second special charge, for the reason, also, that it had no application to facts of the case, as the accused never had any difficulty with the deceased, much less had he beaten him. The evidence showed that at no time the accused carried the stock of his gun to his shoulder, either when he snapped or when he fired.”
The second bill declares: “That on the trial of the cause, the court charged the jury that the provocation, in order to reduce the homicide from murder to manslaughter, must come from the party with whom the accused had the difficulty, and that provocation from any one else would not be sufficient for that purpose, whereupon counsel for defendant did reserve this bill of exception.”
The statement of the district' judge is as follows: “The facts of the case are detailed in another bill of exceptions filed with this, and I refer to them in connection with this bill as explanatory of the charge given and complained of, which was to the effect that if one in the heat of blood and passion upon due and adequate provocation killed another, it would reduce the crime from murder to manslaughter ; but in order to reduce the homicide to manslaughter, the *1035 just and adequate provocation giving rise to the heat oí blood and passion must have been given by the deceased. That provocation given by one person to the accused giving rise to heat of blood and passion did not authorize the accused to attack and kill another person, and claim that he was acting in the heat of blood and passion in order to reduce the homicide to manslaughter, unless the excitement and passion were of such a nature as to utterly dethrone reason. What is adequate provocation had been previously defined, and from the statement of facts given in the other bill, that deceased, had not given any provocation to accused to cause heat of blood; and passion. In the same connection the jury had been charged ort insanity.”
The entire evidence in this case went without objection to the jury. The facts are known to us only in so far as we find them stated in the bills of exception. Taking these recitals as true, the judge’s action in ruling adversely upon the special charges submitted to him was clearly correct.
There was no attempt on the part of the deceased to illegally restrain the accused of his liberty, either under color of legal process or otherwise, and therefore a charge based, as was defendant’s first proposition, on the hypothesis of such an attempt, would have been totally unsupported and unwarranted. What is called the second special charge was nothing more than a request that the judge should announce to the jury that on some occasion, not particularized, where a defendant who had been violently beaten and abused made his escape, ran to his house eighty yards off, ran back and meeting with the accused stabbed him, his act had been declared to be not murder, but manslaughter.
Assuming that such a decision had been at some time rendered, the judge very properly refused to refer to it — it must have rested on special exceptional circumstances and fixed and announced no principle; if any was deducible from it, the principle and not the decision should.have been advanced and urged. There was, however, nothing in the case at bar under the statement of facts as given upon which the court could have been called upon to charge upon the law of manslaughter and to make his failure to do so ground of reversible error. There was no evidence in the case tending to reduce the crime below the grade of murder.
The judge was not requested to deliver a written charge. The. *1036 only portion of it objected to by defendant’s counsel is a single sentence wrenched from the whole. Though the particular sentence brought to our notice might, under some circumstances, be found to be too broadly stated, we have no reason to believe that, when taken in connection with other portions and the evidence to which it was to be applied, the jury was misled, and we are of the opinion that the accused was not prejudiced.
Judgment affirmed.