ST. PAUL, J.
We gather from the record the following facts which we think pertinent, to wit:
The Jefferson Land Company, being the owner of a iarge tract of land in Jefferson parish which it desired to drain, decided to avail itself of the provisions of Act 317 of 1910, relative to the organization of drainage districts; and to that end, and in order to comply with the statute, which required that there be at least five landowners within the limits of such drainage district, transferred to a sufficient number of its employees small parcels of the land, and put these deeds on record.
Whether these transfers were real or simulated is presently immaterial. The drainage district was duly formed in apparent conformity with law, and authorized a large bond issue, none of which, however, appe'ars to have been disposed • of, except (say) $3,700 thereof, given to plaintiff’s husband in part payment of a dredgeboat sold and delivered to said drainage district of which bonds some $2,100 came lawfully into the possession of the widow; the other $1,600 having passed into the hands of other parties.
I.
Thereafter the Jefferson Land Company was adjudged a bankrupt, and the Ottawa Banking & Trust Company became the trustee in bankruptcy. Still later some $10,SOO of said bonds came into- the possession of one James D. Lacey, under circumstances which need not be detailed here. And thereafter Lacey, by mandamus, compelled the drainage district to levy an acreage tax for the payment of the interest on said bonds, and then mandamused the assessor to assess, and the tax collector to collect, the taxes so levied.
The tax collector being aboht to sell the property of the bankrupt for the unpaid taxes of 1917, the trustee thereupon applied to the United States District Court to declare the drainage district illegally organized, to annul said $10,800 of bonds, and to annul the acreage taxes for the years 1917 and 1918. A preliminary injunction was prayed for and allowed as to the taxes “for the years 1917 and 1918.” To these proceedings the holders of the $3,700 of bonds (including the relator here) were not made parties.
II.
In its bill of complaint the trustee admitted that “bonds in the sum of $3,700 par value were given in exchange in the month of August, 1914, to Thomas J. Sellers in part payment of a dredgeboat and appurtenances” (see paragraph 20), and again that “the said Fifth drainage district was organized by proceedings apparently valid on their face,” that all proceedings, ordinances and resolutions of the police jury of the parish of Jefferson creating said drainage district, and all ordinances and resolutions adopted by the board of commissioners of said Mfth Jefferson drainage district subsequent to its “alleged” organization, were “apparently valid on their face” (see paragraph 46), and that said $3,-700 of bonds were “validly issued as aforesaid” (see paragraph 52, c); and relief was prayed for “subject to your orator’s making proper provision for the payment or satisfaction of the $3,700 of bonds properly issued and outstanding.”
The United States District Judge found that Lacey was not “a purchaser in good faith, for value, without notice when he bought the bonds”; that, on the contrary, with full knowledge of all the facts, he merely went through the form of purchasing them *1009 from the drainage district, but in reality only exchanged for them a like amount of utterly invalid certificates of indebtedness issued by the district, and once sold at public auction to his knowledge for the small sum of $175.
The district judge did not by his decree adjudge the drainage district illegally organized. He merely annulled the taxes for the years 1917 and 1918 (which had been unloosed at the sole instance of Lacey;, and also canceled the $10,800 of bonds held by Lacey. But he went no further, and in view of the foregoing allegations and prayer the complainant was entitled to no further relief without “making proper provisions for the payment or satisfaction of the $3,700 of bonds properly issued and outstanding”; and the United States Circuit Court of Appeals, by its decree, merely “affirmed” the decree of the District Court. See 272 Fed. Rep. 450. So that this decision (whatever may have been the reasons assigned) is binding only as to the taxes of 1917 and 1918 and the $10,-800 of bonds involved therein; it is not binding at all upon this relator or as to the bonds herein involved or the taxes for subsequent years.
Of all of which we make mention, not for the purpose of holding that the bonds held by relator are valid and binding, but simply to show that said bonds are not so patently illegal that their nullity may be set up by any one.
III.
This is a mandamus directed to the drainage district, the assessor, and the tax collector, directing each to perform his duty in levying, assessing, and collecting an acreage tax to pay the bonds held by relator.
The drainage district has put in no appearance. The assessor and the tax collector plead that the drainage district, a necessary party, has not been served with process, and that no preliminary default was taken against it. N They also set up the alleged illegality in the organization of the drainage district and consequent invalidity of the bonds issued by it, and that the commissioners of the district are not qualified to hold their office.
[1, 2, 4] To the last contention of the assessor and collector it suffices to answer that the status of a public officer cannot be attacked collaterally. State v. Sadler, 51 La. Ann. 1397, 26 South. 390. To their first it may be said that no preliminary default is necessary in a summary proceeding by mandamus (C. P. arts. 842, 843), and that the amended return of the sheriff shows that the district was properly cited through its vice president. Such amendment was properly allowed. Factors’ & Traders’ Insurance Co. v. De Blanc, 31 La. Ann. 100; O’Hara v. Independence Lumber & Improvement Co., 42 La. Ann. 226, 7 South. 533.
[3] In so far as they attempt to set up an issue as to the legality of the organization of the drainage district, and the validity of the bonds issued by it, we are of the opinion that they, as purely ministerial officers, have no interest therein and no right to urge the same. The drainage district was organized, apparently at least, in accordance with law, and likewise “apparently” issued the bonds in strict conformity with law. On the face of things the bonds appear to be valid obligations of a validly organized drainage district, and they cannot be attacked in this manner and on the ground of latent defects therein by parties having no interest whatever in such an issue. That issue can properly arise only when urged by some one having an interest to do so; say, some taxpayer when called upon to pay the tax. Non con-stat that any will do so.
Decree.
The judgment appealed from is therefore affirmed.
Rehearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.