(98 South. 549)

No. 26355.

## STATE v. BAGWELL.

(Dec. 17, 1923.)

*(Syllabus by Editorial Staff.)*

1. Jury ⬅65—Failure to seal box from which names of jurors drawn did not require disqualification.

Though tales jurors were drawn from a box which had not been sealed at the time or since the selection of the names therein, it was not error to refuse to disqualify the jurors; it not appearing that fraud had been practiced or any wrong committed in the drawing or summoning of the jury.

2. Jury ⬅65—That slot in tales jury box not sealed did not require disqualification of jurors.

In view of Act No. 135 of 1898, § 11, as amended by Act No. 182 of 1914, which does

not require that the tales jury box be sealed but only that it be locked, the fact that there was a small slot through which it would have been a physical impossibility to add to or take from the list of tales jurors, contained in an envelope locked therein, did not require the court to disqualify the jurors.

**3. Jury ⬅➡82(2)—That tales jury box contained names which should have been drawn in a previous case held not reversible error.**

That, in a prosecution for murder, the names of tales jurors were drawn from a box containing more names than should have been therein, due to the mistake of the clerk in another case in drawing from the general venire box instead of the tales jury box, *held* not reversible error; accused not having a right to trial by any particular jury.

**4. Criminal law ⬅➡304(16)—Court bound to take judicial cognizance of its own minutes.**

A bill of exceptions, on appeal from a conviction of murder, taken to the court's refusal to allow defendant to introduce in evidence certain minutes of the court, *held* frivolous, since the court was bound to take judicial cognizance of such minutes.

**5. Criminal law ⬅➡429(1)—Oral testimony that witness was "acting coroner" held admissible.**

In a prosecution for murder, it was not error to admit oral testimony that witness was "acting coroner" for the parish, in view of Rev. St. 1870, § 667, providing that any coroner in case of sickness or absence may appoint a deputy, since his title to the office could not be collaterally impeached, and it was therefore the fact of possession of the office that was to be proved.

**6. Witnesses ⬅➡363(1)—Evidence to show interest of witness in case held admissible on cross-examination.**

In prosecution for murder, it was not error, after the state had closed its case, to allow it on cross-examination to ask a witness for defendant whether he was present when defendant drew a gun on deceased; such evidence being elicited to show the interest of the witness after he had testified that he had no interest in the case.

**7. Criminal law ⬅➡683(1)—Cross-examination not "rebuttal testimony."**

Cross-examination is not "rebuttal testimony."

**8. Homicide ⬅➡170—Rebuttal evidence as to dress of defendant the day after killing held admissible.**

In a prosecution for murder, evidence that on the day after the killing defendant wore overalls and an army cap *held* admissible to rebut testimony that accused wore no such cap and that he had not worn the cap for more than two years; there being evidence identifying accused as having been at the scene of the killing dressed in overalls and an overseas cap, and the defense being an alibi.

Appeal from Fourth Judicial District Court, Parish of Lincoln; S. L. Digby, Judge.

Jack Bagwell was convicted of murder, and he appeals. Affirmed.

Holstead & Thompson, of Ruston, for appellant.

A. V. Coco, Atty. Gen., H. G. Fields, Dist. Atty., of Farmersville, T. S. Walmsley, of New Orleans, A. J. Bordelon, of Marksville. J. W. Elder, of Farmersville, and W. E. McBride, of Ruston, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. Defendant was convicted of murder "without capital punishment." His appeal presents six bills of exception, as follows:

### Bill No. 1.

The substance of this bill is thus stated in defendant's brief, to wit:

"The court erred in not setting aside tales jurors drawn from a box (1) which had not been sealed at the time of, or since, the selection of the names therein; and (2) which did not, at the time of drawing the names of prospective jurors therefrom, contain 100 names less the number ordered drawn previously during the same term of court as shown by the minutes."

(1) The trial judge says in his per curiam:

"I do not consider it necessary for the court to make a statement of facts concerning this exception, since all of the testimony given on trial of the motion was reduced to writing. However, I will state that the only irregularity

whatsoever in connection with the tales jury box was a small slot in the top of the box, through which it would have been a physical impossibility to add or take from the list of tales jurors contained in an envelope locked in said box. The testimony showed that the box was sealed with the exception of the small slot."

The above finding of facts is fully supported by the evidence; and we think the judge correctly refused to disqualify the jurors on that ground, for two reasons:

[1] First. In State v. Taylor, 44 La. Ann. 783, 785, 11 South. 132, the defendant complained of a series of irregularities in connection with the filling and keeping of the jury box, including among them that the box "was not locked and sealed" but the court said there was no evidence that fraud had been practiced or any wrong committed in the drawing or summoning of the jury that would work any great and irreparable injury to the defendant, and accordingly refused to quash the venire, citing State v. Green, 43 La. Ann. 402, 9 South. 42; State v. Simmons, 43 La. Ann. 991, 10 South. 382; State v. McCarthy, 44 La. Ann. 323, 10 South. 673. And

[2] Secondly. Even if the law required that a tales jury box should be sealed, that would not mean that every crack and crevice therein should be made air-tight with sealing wax; but suffice it to say that while it may be a good precaution to keep such jury box sealed as well as locked, yet the law does not require that it be sealed, but only that it be locked and the key thereof delivered to the clerk of court. See section 11 of Act 135 of 1898, amended by Act 182 of 1914.

(2) The trial judge further says:

"The evidence of E. D. McCallum, clerk, sworn by plaintiff in motion (defendant here), was that said box contained the names of 90 jurors; that it originally contained 100 names, but that 10 names were drawn therefrom on the day before by order of the court; which testimony was correct to the knowledge of the court." (Italics ours.)

This finding of fact is supported by the evidence; and is not disputed. But the complaint of defendant is, not that 10 names of jurors had previously been drawn out of said box, but that 10 other names should also have been drawn therefrom, and that only 80 names should have been left therein instead of 90 as was. And the basis of this complaint is to be found in the per curiam to bill No. 2, which is as follows:

"I will state that this tales jury box was brought into court and opened for the first time on October 4th, and under order of the court 10 names were drawn therefrom. That these 10 were the only names drawn therefrom, from the time the seal on the box was broken until the drawing of tales jurors in this case. However, I will state that on Tuesday, October 2d, during the trial of a darkey (Vassey Ettress) charged with manslaughter, the court ordered the tales jury box brought into court and 10 names drawn therefrom; that the clerk, through error, brought in the general venire box containing the names of 300 jurors, and drew from said box the names of 10 jurors. * * *" (Italics ours.)

In other words, the complaint of defendant is, in effect, that the error of the clerk, in failing to take names of tales jurors for the trial of Vassey Ettress from the tales jury box, annulled the whole panel of tales jurors, thus disqualifying all those whose names still remained in said tales jury box.

[3] The complaint is wholly without merit. Of course, defendant had the right to be tried by none but qualified jurors, but it was no concern of his that another accused did not complain of the manner of selecting the jurors to try him, or insist upon their being taken from the tales jury box. All that this defendant was entitled to was that no jurors' names should be taken from said box except under order of court, and that no jurors' names should be placed therein except by the jury commission under proper authority. For—

"Parties have no right to a trial by any particular juror or jurors, but only to a trial by a competent and impartial jury." 24 Cyc. 251.

### Bill No. 2.

This bill was taken to the refusal of the court to allow defendant, on the trial of the matters complained of in bill No. 1, to *introduce in evidence* the minutes of October 2d and October 4th, to prove the matters set forth in the two statements per curiam last given above.

[4] As the court was bound to take *judicial cognizance* of its own minutes, and did in fact take judicial cognizance thereof, we fail to perceive wherein either the court erred or the defendant suffered injury. The bill is frivolous.

### Bill No. 3.

[5] This bill is reserved to the ruling of the court allowing one Dr. J. H. Pankey to testify that he was "acting coroner" for the parish. Section 667, Revised Statutes of 1870, provides:

"Any coroner shall, in case of sickness or necessary absence, have power to appoint a deputy to perform his duties. * * *"

There is therefore such an office as "acting coroner." And since there is such an office it follows that he who is actually performing the duties of that office for the time being is a de facto officer whose title cannot be collaterally impeached. State v. Fifth Jefferson Drainage District, 151 La. 1006, 92 South. 592; State v. Sadler, 51 La. Ann. 1397, 26 South. 390. And whether or not a person is actually performing the duties of an office can, of course, be shown by oral testimony; since it is not the *right to the office*, but the *fact of possession*, which is to be proved.

### Bill No. 4.

[6] In this bill the defendant complains that after the state had closed its case, one

Grover Colvin was called as a witness for defendant, and on cross-examination by the state was asked the following question:

"Mr. Colvin, I'll ask you whether or not you were present on Middle Fork creek, last December, when the defendant, Jack Bagwell, drew a gun on the deceased, Jess Bagwell?"

To which the defense objected for the reason that—

"It was not in rebuttal of testimony introduced by the defendant, but was upon a subject-matter which had been brought out and gone into by the state in its examination in chief."

Which objection the court overruled for the reason given in its per curiam, as follows:

"The state had shown by testimony in chief before resting its case, and without objection from the defendant, that the defendant in company with Grover Colvin, had in last December, on Middle Fork creek, drawn a gun on Jess Bagwell, the deceased, and threatened to kill him; at which time Grover Colvin told defendant: '*If you are not going to kill him, make him come out on this side of the creek and beat hell out of him.*'" (Italics show quotation.)

"The defendant offered the witness Grover Colvin, the same man referred to in the above testimony. The state on cross-examination asked the witness if he did not have considerable interest in the case, to which question he answered: 'No.' Then it was that the question herein complained of was asked and objected to as not being rebuttal.

"Cross-examination of a witness for an accused is not what is known as rebuttal testimony. The testimony was admissible to show the witness' interest, his feeling, and the relationship he occupied toward the defendant and the deceased."

We see no error in this ruling. When a witness is asked whether he is taking an interest in the case, and answers that he is not, it is surely competent then to ask him, in order to show his interest, whether he had not taken an active part in matters connected with and leading up to the occurrence out of which the case arises.

[7] And cross-examination, whether ad-

missible or inadmissible, is not *rebuttal* testimony. The distinction is of no importance here, but it is well to note it now; since if we once begin to confuse the terms, we may soon find ourselves confusing the law applicable in the premises.

### Bill No. 5.

[8] In this bill defendant complains that one Charlie Williamson was allowed to testify on rebuttal that on the day after the killing the defendant wore overalls and an army cap.

The defense was an *alibi.* A witness for the state had identified the accused as having been at the scene of the killing, and had described him as dressed in overalls and an "overseas cap." A witness for the defense then swore that the accused had not worn his overseas cap in over two years, and that on the day of the killing he wore an "old flopped red hat"; and another witness for the defense swore that he (the witness) wore at the scene of the killing an old hat that might have looked like an overseas cap.

We find no error in the ruling of the trial judge. The testimony was admissible as well to rebut the testimony of both witnesses that the accused wore no such cap on the day of the killing, as to impeach the testimony of one of them that the accused had not worn the cap for more than two years. The testimony was clearly *rebuttal.* See State v. Holbrook, 153 La. 27, 97 South. 27, Bill No. 11.

### Bill No. 6.

This bill was reserved to the overruling of defendant's motion for a new trial. In his per curiam the trial judge says:

"There seems to be no special objection reserved in this exception to the overruling of the motion for a new trial with reference to alleged newly discovered evidence. However, I will state that the alleged newly discovered evidence was merely cumulative of that offered by the defendant on the trial; that it could not be said that defendant could not have produced said evidence at the trial. One of the parties from whom the new evidence comes was a state witness and subject to cross-examination on the trial of the case.

"As to the verdict of the jury being contrary to the facts, I consider the exception without force or effect. * * * The state offered sufficient evidence to support the verdict if the jury believed it."

We see nothing in this bill to warrant our interfering with the action of the trial judge in refusing a new trial, or with the verdict and sentence herein.

### Decree.

The judgment appealed from is therefore affirmed.