(101 South. 338)

No. 26453.

### STATE v. WEBB.

(June 27, 1924.)

*(Syllabus by Editorial Staff.)*

1. Jury ⬳131(8) — Sustaining objection to question to jury as to self-defense held proper.

In homicide case, court properly sustained objection to question to juror on voir dire, "Do you believe that a man has the right to defend himself when he is or may be suddenly or violently attacked?"

2. Jury ⬳131(8)—Not permissible to question jurors as to opinion as to what law is or ought to be.

It is not permissible to question jurors as to their individual opinion or belief as to what law is or ought to be in a given case or under certain circumstances.

**3. Criminal law ⟐731—Constitutional provision declaring jurors judges of law construed.**

Constitutional provision declaring jurors are judges of both law and facts in criminal case means only that jurors are to accept law as given to them in charge by court and apply it to facts of particular case.

**4. Criminal law ⟐1166½(6)—Jury ⟐131(8)—Refusal to permit juror to answer question concerning circumstantial evidence proper and harmless, if error.**

Court did not err in refusing to permit juror to answer question, "Would you convict a man on circumstantial evidence alone?" and defendant suffered no injury in any event.

**5. Jury ⟐65—Statute held to require only that tales jury box be locked.**

Act No. 182 of 1914 only requires that the tales jury box be locked, and bill complaining that box from which names were drawn was not signed, sealed, and delivered, and not certified to by the clerk of court and jury commissioners, was without merit.

**6. Jury ⟐47 — Person to be competent juror need not be elector.**

A person to be competent juror need not be elector, and it is sufficient that he has resided in parish in which court is held at least one year, under Act No. 135 of 1898, and it was immaterial that juror's name appeared in jury list as resident of ward 8, whereas he testified on his voir dire that he lived in ward 12; the two comprising same police jury ward.

**7. Jury ⟐126—Failure to sustain challenge for cause held proper.**

It was proper to refuse to sustain challenge of cause made against juror F. D. A., though he sometimes signed his name D. F. A.

**8. Criminal law ⟐368(3)—Evidence properly excluded as hearsay and not part of res gestæ.**

Court properly excluded as hearsay answer to question whether witness did not hear a certain person say that, when he got to the body, he found an open knife by its side, about five hours after the killing; it being no part of res gestæ.

**9. Criminal law ⟐683(1)—Incriminating evidence always open to rebuttal and explanation.**

Incriminating evidence introduced by state is always open to rebuttal and explanation by accused, and rebuttal or explanatory evidence is not inadmissible on score of being irrelevant.

**10. Criminal law ⟐361(1)—Evidence as to why accused did not leave farm of deceased held properly excluded.**

In homicide case, where state asked defendant on cross-examination why he had not left deceased's farm at time of alleged insult to wife, court did not err on redirect examination in sustaining objection to question whether he had any means or money; purpose being to show that defendant was not in position financially to leave farm.

**11. Criminal law ⟐1169(2)—Error in excluding evidence harmless.**

Any error in excluding evidence as to why defendant did not leave deceased's farm at time of insult to his wife was harmless, where defendant in answer to state's question stated that he did not know of any reason why he did not leave.

**12. Witnesses ⟐76(3)—Wife may not give illegal, incompetent, and irrelevant testimony because husband does not object to her being sworn as a witness.**

It did not follow, because husband did not object to wife being sworn as a witness, that she could be permitted to give illegal, incompetent, and irrelevant testimony, even though strictly in rebuttal, and such as would have otherwise been admissible as impeaching testimony, in view of Act No. 157 of 1916.

**13. Witnesses ⟐188(1) — Statute prevents wife testifying to any conversation with husband.**

Under Act No. 157 of 1916, wife cannot testify to any private conversations with her husband, regardless of her mental attitude toward husband.

**14. Criminal law ⟐829(1)—Refusal of special charges covered by general charge not error.**

Court did not err in refusing special requested charges, where legal principles were covered by general charge.

Brunot and Leche, JJ., dissenting.

Appeal from Fourth Judicial District Court, Parish of Union; S. L. Digby, Judge.

Abner Webb was convicted of murder, and appeals. Reversed and remanded.

Elder & Everett, of Farmerville, for appellant.

Percy Saint, Atty. Gen., H. G. Fields, Dist. Atty., of Farmerville (Percy T. Ogden, of

Crowley, and M. M. Irwin, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

THOMPSON, J. The defendant was convicted of murder with a qualified verdict, and from a sentence to imprisonment at hard labor for life prosecutes this appeal. There are twenty-one bills of exception complaining of errors committed by the trial judge during the progress of the trial.

Bills 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, and 13.

[1-3] These several bills are directed at the ruling of the court in sustaining objections to certain questions propounded to different jurors on their voir dire, touching their opinion and belief on the law of self-defense. The following is one of the questions propounded:

"Mr. Calloway, do you believe that a man has the right to defend himself when he is or may be suddenly or violently attacked?"

The ruling of the court in not permitting the question to be answered was entirely correct. It is not permissible for counsel to question jurors as to their individual opinion or belief as to what the law is or ought to be in a given case or under certain circumstances. It is true that the Constitution declares that jurors are the judges of both the law and the facts in a criminal case on the question of the guilt or innocence of the accused party, but this is true with respect to the law only in the sense that they are to accept the law as given to them in the charge by the court and apply it to the facts of the particular case.

"Jurors are not supposed to know the law, and are not incompetent because their crude opinions may not be in accord with the views of jurists and text-writers." State v. Perioux, 107 La. 601, 31 South. 1016; State v. Willie, 130 La. 454, 58 South. 147.

The syllabus by the court in the first case above noted is:

"Jurors should not be examined as to their opinions on questions of law, such as the burden of proof, reasonable doubt, etc."

### Bill 5.

[4] This bill was reserved to the refusal of the court to permit a juror to answer the following question:

"Would you convict a man on circumstantial evidence alone?"

We fail to see wherein the accused has any interest in testing the views of the juror on circumstantial evidence. If the juror answered in the affirmative, he would but be obeying the requirement of the law, and this would afford the defendant no cause for challenge. On the other hand, if the juror was opposed to convicting on circumstantial evidence alone, the right of challenge for cause would rest with the state. At all events, we fail to see wherein the accused has suffered any injury or has been deprived of any substantial legal right by the ruling of the court.

### Bill 12.

[5] This bill recites that the clerk and sheriff were ordered by the court to draw forty tales jurors from the tales jury box; that counsel made timely objection to the drawing and based his objection upon the fact "that the box from which the names were drawn was not signed, locked, sealed, and delivered and certified to by the clerk of court and the jury commissioners." The judge states that the clerk alone was ordered to draw the tales jurors from the box, and he is confirmed by the entry on the minutes. The judge further states in his per curiam:

"I had examined the box before it was opened and at the time the objection was made. The box was not only securely locked but also sealed, and there was not only no evidence but no intimation to the contrary other than the statement used by the attorney in making the objection. The remaining objection contained in this bill is that the box was not properly certified to by the clerk and jury commissioners. A piece of paper with which the box was sealed

(in addition to being locked) bore the following inscription:

" 'Signed, locked, sealed, and delivered to the clerk of court as custodian thereof this the 16th day of November, 1923.

" 'T. E. Newton.<br>
" 'J. C. Rockett.<br>
" 'J. M. Henton.<br>
" 'Jas. A. Dean.

" 'Witnesses:
>" 'W. S. Pickens.
>" 'H. B. Smith.' "

We find no error in the action of the court. Act 182 of 1914 only requires that the tales jury box be locked. State v. Bagwell, 154 La. 980, 98 South. 549.

### Bill 14.

[6] The basis of this bill is a challenge of the competency of the juror Grafton because his name appears in the jury list as a resident of ward 8, whereas he testified on his voir dire that he lived in ward 12. The judge's statement shows that the juror once voted at Shilo before a new precinct was created, and that since that time he had voted at Bernice; that some call it ward 12 and some ward 8. The judge understood that the Shilo end of the ward is known as justice ward 8 and the Bernice end of the ward as justice ward 12. The two comprise one and the same police jury ward.

A person to be a competent juror need not be an elector. It is sufficient that he has resided in the parish in which the court is held at least one year. Act 135 of 1898; State v. Willie, 130 La. 454, 58 South. 147. No claim is made that Grafton had not resided in the parish for as much as one year immediately before being called to serve as a juror.

### Bill 15.

[7] This bill complains at the failure of the court to sustain a challenge of cause made against the juror F. D. Antley. The juror testified that he sometimes signed his name as D. F. Antley and at other times as F. D. Antley. His correct name was Free-man David Antley and he appeared on the jury list as F. D. Antley. It is not pretended that there was any mistake as to the identity of the person being the one drawn and intended to be drawn as a juror. There was no other F. D. Antley in that ward or community.

### Bill 16.

[8] A state witness was asked in cross-examination the following question:

"I will ask you if you didn't hear Ira Black say that night that when he got to the body of Mr. Holloway that he found an open knife by Mr. Holloway's side?"

An objection that the evidence sought was irrelevant, hearsay, and not a part of the res gestæ was sustained. The judge states that—

"The question could not have been for the purpose of impeachment since Ira Black, at that time had not been called as a witness. * * * It was in no manner connected with the difficulty, and was at a time five or six hours after the killing. The question called for the rankest sort of hearsay."

We approve the ruling. The excluded evidence formed no part of the res gestæ, and was purely hearsay.

### Bill 17.

[9] The defendant was sworn and testified in his own behalf. On cross-examination he was asked by the state why he had not left Mr. Holloway's farm at the time of the alleged insult to his wife. On redirect examination he was asked by his counsel if he had any means or money; the purpose of the testimony being to show that defendant was not in a position financially to leave the farm. An objection of irrelevency interposed by the state was sustained.

The general rule is that incriminating evidence introduced by the state is always open to rebuttal and explanation by the accused, and such rebuttal or explanatory evidence is

not inadmissible on the score of being irrelevant.

[10] In this case, however, we cannot see what possible pertinence or bearing the evidence sought to be introduced could have had. The defendant had the legal right to remain on the place he was cropping on under the share system, and was not compelled to leave because of insult offered his wife.

[11] However, if there was error in excluding the evidence, the defendant suffered no injury, as we gather from counsel's brief that the defendant in answer to the state's question stated that he did not know of any reason why he did not leave the place.

### Bill 18.

This bill shows that the wife of the defendant was called to testify by the state, and was asked the following question:

"What statement did he make to you" (referring to her husband) "with reference to the deceased having visited your house?"

Over the objection of the counsel for the accused that the conversation sought to be introduced was between husband and wife and under the law was a privileged communication, and inadmissible in evidence against the accused, and that the evidence was not in rebuttal, the witness was permitted to state the conversation, and answered the question as follows:

"He said that he came there on Monday night and slammed the door against the foot of his bed, and I told him not to do that as he would wake him up, and said Mr. Holloway said with an oath that he couldn't wake the son of a bitch and that I got up and walked out with him on the porch."

The judge in his per curiam gave as a reason for admitting the testimony the following:

"Mrs. Abner Webb was used throughout as a material witness for the state. The defendant made no objection to her being sworn; she not only made no objection, but appeared rather hostile to the defendant. The testimony was not only in direct rebuttal of the testimony for the defendant, but was admissible for the purpose of impeaching his testimony."

The ruling of the trial judge was manifestly erroneous, and it must be assumed, under the circumstances, was greatly prejudicial to the rights of the defendant.

[12] Act 157 of 1916 declares that the competent witness in any proceeding, civil or criminal, shall be a person of proper understanding. Under the express terms of this statute the wife was made a competent witness for or against her husband; the exercise of the privilege being left entirely to her own inclination and discretion. The husband was powerless under the terms of the statute to prevent his wife from testifying against him on any matters not expressly prohibited by the law. But because of the competency of the wife as a witness, and because she chose to assume a hostile attitude towards her husband, and because her husband did not object to her being sworn as a witness, it does not follow that the wife could be permitted to give illegal, incompetent, and irrelevant testimony, even though such testimony was strictly in rebuttal and would have been otherwise admissible as impeaching testimony.

[13] The statute we have referred to, which makes the husband and wife competent witnesses for or against each other at their option, in unmistakable language declares that private conversations between husband and wife shall be privileged. The statute makes no exception, modification, or reservation, but includes in its terms all private conversations had between husband and wife of whatever nature and character. Nor does the statute take into consideration the mental attitude of the spouse who offers to divulge, to the prejudice of the other spouse, private and confidential conversations had between them.

If the question as to whether a private

conversation between husband and wife is or is not privileged is to be determined by their relations toward each other, then the prohibitive provision of the statute may as well be stricken out, for it becomes a dead letter. The one who wants to incriminate the other by reproducing their private conversations can always assume the required hostile frame of mind.

In A. & E. E. of Law, vol. 23, p. 94, it is stated:

"Statutes creating this privilege do not affect the competency of husband and wife as witnesses for each other, but they may testify as to any matter whatever of which they have knowledge, except as to admissions and conversations during the existence of the marriage relation. It is not necessary that there should be any injunction of secrecy on the part of the spouse who makes the communication."

In discussing the question of private conversations between husband and wife, as being privileged and inadmissible as evidence in a criminal charge against one of the spouses, the Supreme Court of the United States, in Bassett v. United States, 137 U. S. 496, 11 Sup. Ct. 165, 34 L. Ed. 762, said:

"This rule is founded upon the deepest and soundest principles of our nature, principles which have grown out of those domestic relations that constitute the basis of civil society, and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down and impair the great principles which protect the sanctities of husband and wife would be to destroy the best solace of human existence."

There is nothing in the record to show that the testimony given by the wife was other than what it purports to be—a private conversation between husband and wife. If there were any other persons present at the time the statement is alleged to have been made by the husband to the wife, the record fails to show the fact. The presumption is that no other person was present, otherwise

the state would have produced such third person.

We are constrained to disagree with the ruling of our learned brother of the district court. If the conversation between the husband and wife in the instant case can be used against the husband through the testimony of the wife, then where is the line to be drawn between conversations that are privileged and those that are not. There can be no line of demarcation, and a confession made by the husband to the wife in confidence can be made the basis for a criminal charge against the husband at the whim and caprice of the wife. Such a principle is unthinkable and abhorrent to all sense and appreciation of the holy and sacred relations of husband and wife.

### Bills 19, 20, and 21.

[14] These three bills were reserved to the refusal of the judge to give certain requested special charges. As abstract propositions of law there may not have been any serious legal objection to the charges, but we find from the judge's statement that the counsel for the defendant stated:

"I think the requested charges have possibly been covered in the general charge, but we except to the ruling of the court to preserve our rights."

The special charges have been considered in connection with the general charge, and we find no error in the court's refusal to give them. While the exact language of the special charges was not used in the general charge the legal principles covered were practically the same.

For the error committed, as stated in bill of exception No. 18, the conviction and sentence appealed from is annulled and set aside, and the case is remanded to the district court to be proceeded with according to law.

BRUNOT and LECHE, JJ., dissent.

BRUNOT, J. (dissenting). This case was heard and decided by Division A. When the opinion was submitted one of the justices found merit in bill No. 18, and the case was referred to the court en banc. In that forum, with reference to bill No. 18, the conclusion was reached that the testimony offered by the state was privileged and that it was prejudicial error to admit it. I respectfully dissent from this ruling, and adhere to the entire original. opinion as a correct expression of the law, viz.:

The defendant was indicted, tried, and convicted for the murder of Weber Holloway. The jury returned a qualified verdict, and the defendant was sentenced to life imprisonment in the Louisiana State Penitentiary. From the verdict and sentence he has appealed.

There are twenty-two bills of exception in the record. Twelve of the bills were reserved to rulings of the court, which excluded answers to questions propounded to jurors under examination on their voir dire. Eleven of these bills, viz., Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, and 13 are substantially the same, and may be so considered. The verbiage of the questions differ, but in each instance the answer called for is an expression of the juror's belief in the law of self-defense. Bill No. 5 was reserved to the refusal of the court to permit counsel for the defendant to ask a juror whether he would convict an accused person upon circumstantial evidence alone.

Bill No. 1 was reserved to the ruling of the court, upon objection by the state, to the following question:

"Mr. Calloway, do you believe that a man has the right to defend himself when he is or may be suddenly or violently attacked?"

The court sustained the objection to this question, and its per curiam to this bill is, in part, as follows:

"A juror may or may not personally believe in or approve the law of self-defense, but if he is willing to accept and apply the law, as given to him in the charge of the court, he is a good juror, and so the question is not what he believes, but what he is willing to do."

The ruling is correct, because jurors should not be examined as to their opinions on questions of law. State v. Perioux, 107 La. 601, 31 South. 1016; State v. Willie, 130 La. 454, 58 South. 147; State v. Harris, 51 La. Ann. 1194, 25 South. 984.

Bills Nos. 2, 3, 4, 6, 8, 9, 10, 11, and 13 present the same question for review that we have considered 'in disposing of bill No. 1. The question asked in several instances merely states the law of self-defense with more detail and with more exactness.

Bill No. 5 was reserved to the ruling of the court sustaining an objection to the following question propounded to juror Shields, viz.:

"Would you convict a man on circumstantial evidence alone?"

It is the indisputable right of the state, in its examination of a juror on his voir dire, to ascertain if the juror would convict upon circumstantial evidence alone. It is likewise the right of the state in cases of the gravity of the one we are considering to ascertain if a juror has conscientious scruples against the infliction of the death penalty. A juror who will not convict, if the proven circumstances are sufficiently connected and convincing as to establish guilt to the exclusion of every other reasonable hypothesis, is not a competent juror for the state. If he has conscientious scruples against the infliction of the death penalty, he is, likewise, not a competent juror for the state. If, however, he is willing, without reservation, to perform his full duty toward both the state and the accused, neither can complain. It follows that, as no right of the accused but only the rights of the state can be affected by these questions or the juror's answer thereto, the

state alone has the right to propound them. This right of the state rests upon the principles of the common law, independently of any statutory enactment. State v. Kennedy, 8 Rob. 590; State v. Reeves, 11 La. Ann. 685; State v. Hebert, Man. Unrep. Cas. 303; State v. Baker, 30 La. Ann. 1134; State v. Vines, 34 La. Ann. 1073; State v. Stewart, 45 La. Ann. 1164, 14 South. 143; State v. Shields, 33 La. Ann. 994; State v. Frier, 45 La. Ann. 1434, 14 South. 296; State v. Barker, 46 La. Ann. 798, 15 South. 98; State v. Stephens, 116 La. 36, 40 South. 523.

The defendant cannot challenge a juror for cause who has a fixed opinion against capital punishment, but the state may do so. State v. Taylor, 44 La. Ann. 783, 11 South. 132; State v. Compagnet, 48 La. Ann. 1470, 21 South. 46; State v. Erwin, 133 La. 550, 63 South. 167.

Bill No. 12 was reserved to the overruling of an objection to the drawing of tales jurors. The bill recites that the clerk and sheriff were ordered by the court to draw forty tales jurors from the tales jury box; that counsel made timely objection to the drawing, and based his objection upon the following grounds:

"That the box from which the names were drawn was not signed, locked, sealed, and delivered and certified to by the clerk of court and the jury commissioners."

The judge in his per curiam to this bill says that the clerk alone was ordered to draw the tales jurors from the box. This statement of the judge is confirmed by the minute entry of December 17, 1923, which appears in the record on unnumbered pages containing the minute entries of the court. The judge concludes his per curiam as follows:

"I was unable at the time and am unable yet to see any virtue or seriousness in the objection. * * * I had examined the box before it was opened and at the time the objection was made. The box was not only securely locked but also sealed, and there was not only no evidence but no intimation to the contrary other than the statement used by the attorney in making the objection. The remaining objection contained in this bill is that the box was not properly certified to by the clerk and jury commission. A piece of paper with which the box was sealed (in addition to being locked) bore the following inscription:

"'Signed, locked, sealed, and delivered to the clerk of court as custodian thereof, this the 16th day of November, 1923.

                 "T. E. Newton.
                 "'J. C. Rockett.
                 "J. M. Hinton.
                 "Jas. A. Dean.
" 'Witnesses:
    "'W. S. Pickens.
    "'H. B. Smith.' "

We have nothing before us but the statements in the bill and the per curiam thereto of the trial judge. The latter is controlling. Moreover, Act No. 182 of 1914 only requires that the tales jury box be locked. State v. Bagwell, 154 La. 980, 98 South. 549.

Bill No. 14 challenges the competency of Juror J. E. Grafton, because his name appears on the jury list as a resident of ward 8, whereas he testified, on his voir dire, that he lived in ward 12. The judge in his per curiam says:

"The juror testified that he once voted at Shilo before a new precinct was created, and that since that time he had voted at Bernice; that some call it ward 12 and some ward 8. I understand that the Shilo end of the ward is known as justice ward 8 and the Bernice end of the ward as justice ward 12. I know that the two comprise one and the same police jury ward."

Section 1 of Act No. 135 of 1898 fixes the qualifications of a juror to serve in any of the courts of this state. In State v. Willie et al., 130 La. 454, 58 South. 147, this court says:

"A citizen of the state, who has resided more than one year in the parish in which the court is held, is a competent juror as to citizenship and residence, under Act No. 135 of 1898, passed to carry into effect articles 116 and 117 of the Constitution of 1898. A juror need not be an elector, nor a resident of the state for two years."

The trial judge ruled that Grafton was a competent juror, and the ruling is correct.

Bill No. 15 was reserved to the overruling of a challenge for cause of Juror F. D. Antley. Antley testified on his voir dire that he sometimes signed his name as D. F. Antley and at other times as F. D. Antley, and that he used both names. In response to a question by the court he testified that his correct name was Freeman David Antley. The name appeared on the jury list as F. D. Antley. There was no attempt to show a mistake of identity or the existence of another F. D. Antley in that community. The ruling of the trial judge was correct.

Bill No. 16 was reserved to the exclusion of certain testimony sought to be elicited by counsel for defendant. A state witness on cross-examination was asked the following question:

"I will ask you if you didn't hear Ira Black say that night that when he got to the body of Mr. Holloway that he found an open knife by Mr. Holloway's side."

The question was objected to as the evidence sought to be introduced was irrelevant, hearsay, not a part of the res gestæ, and because no foundation had been laid for its admission. The objection was sustained, and the judge's per curiam to the bill is, in part, as follows:

"The question could not have been for the purpose of impeachment since Ira Black, at that time, had not been called as a witness. * * * It was in no manner connected with the difficulty, and was at a time five or six hours after the killing. The question called for the rankest sort of hearsay."

Irrelevant testimony should not be received in evidence. May v. Ransom, 5 La. Ann. 424.

It is the general rule, subject to special and important exceptions, that hearsay evidence is totally inadmissible. The reasons for its exclusion are given in 1 Greenl. Ev.

§ 99; 1 Phil. Ev. c. 7, § 1; Queen v. Hepburn, 7 Cranch, 296, 3 L. Ed. 348.

The exceptions to the general rule excluding hearsay evidence are based upon circumstances which add peculiar weight to this otherwise inadmissible evidence and dispense with the ordinary tests of credibility. The declarations of third parties which are part of the res gestæ come within the exception to the rule, and may be received in evidence.

"Res gestæ consist of circumstances or declarations made admissible as original evidence by reason of their connection with the particular fact under investigation; and the test is whether the fact or circumstance put in evidence is so connected with the main facts under consideration as to elicit its character, to further its object, or to form, in conjunction with it, one continuous transaction." State v. Donelon, 45 La. Ann. 744, 12 South. 922.

The generally accepted doctrine of res gestæ is announced in St. Clair v. United States, 154 U. S. 149, 14 Sup. Ct. 1002, 38 L. Ed. 936. The distinguishing characteristic of the things which constitute res gestæ is that they must be necessary incidents of the criminal act, or immediate concomitants of it. Wharton Crim. Ev. § 263; State v. Perioux, 107 La. 608, 31 South. 1016.

From the court's per curiam it appears that the evidence was excluded because it was hearsay and not a part of the res gestæ. The ruling is correct.

Bill No. 17 was reserved to a ruling excluding certain testimony tendered by defendant. The defendant was sworn and testified. On cross-examination he was asked by the state why he had not left Mr. Holloway's farm at the time of the alleged insult to his wife. On redirect examination he was asked by his counsel if he had any means or money. The state objected to this question for the reason that the testimony was immaterial, irrelevant, and not connected with any issue in the case. There is a statement in the bill of exceptions that the testimony was offered for the purpose of proving that defendant was

not in a position to leave the farm, but there is nothing in the bill itself or elsewhere in the record to indicate that proof of the financial condition of the defendant was material or relevant to the issues of the case. The per curiam of the trial judge is as follows:

"The evidence sought was not only irrelevant and immaterial to the issues of the case, but was self-serving as well."

The authorities cited by us and our comments upon a similar question presented in bill No. 16 have equal application to the question presented in this bill.

Bill No. 18 was reserved to a ruling of the court which permitted the wife of the defendant to testify to certain facts. She was called by the state, and was asked the following question:

"What statement did he make to you with reference to the deceased having visited your home?"

Counsel for defendant objected to the question, and assigned the following reasons:

"That the conversation referred to was between the defendant and his wife; that it was a privileged communication; and that it was not in rebuttal of any testimony brought out by the state."

We assume that counsel intended to use the word defense, and we shall consider that word as substituted for state, as the last word of the quotation.

The judge in his per curiam to this bill says:

"Mrs. Abner Webb was used throughout as a material witness for the state. The defendant made no objection to her being sworn, she not only made no objection, but appeared rather hostile to the defendant. The testimony was not only in direct rebuttal of the testimony for the defendant but was admissible for the purpose of impeaching his testimony. See State v. Holbrook, 153 La. 1025, 97 South. 27, also State v. Bagwell, 154 La. 980, 98 South. 549, Bill No. 5, decided December 17, 1923."

It has been held that the burden is upon the person objecting to evidence on the ground that it involves the disclosure of privileged communications to show that the case is such that the rule will apply. Am. & Eng. Ency. of Law, vol. 23, p. 71; Carroll v. Sprague, 59 Cal. 655; Turner's Appeal, 72 Conn. 305, 44 Atl. 310; McLaughlin v. Gilmore, 1 Ill. App. 563; Bingham v. Walk, 128 Ind. 164, 27 N. E. 483; Smith v. Caldwell, 22 Mont. 331, 56 Pac. 590; Mowell v. Van-Buren, 7 Hun (N. Y.) 569, 28 N. Y. Supp. 1035; Crosby v. Berger, 4 Edw. Ch. (N. Y.) 254; Earle v. Grout, 46 Vt. 113.

"Whether or not the circumstances are such as to make the rule of privilege applicable in a particular case is a question for the court. As a rule of privilege has a tendency to prevent the full disclosure of the truth, it should be limited to cases which are strictly within the principle of the policy which gave it birth." Am. & Eng. Ency. of Law, vol. 23, p. 71.

There is nothing in the record to guide this court in ascertaining, as a fact, whether the testimony sought to be elicited involved the disclosure of a privileged communication. The trial judge, with all of the facts before him, was evidently of the opinion that it did not. There is nothing in this record which will justify us in disturbing his ruling.

Three bills numbered 19, 20, and 21 were reserved to the refusal of the judge to give requested special charges Nos. 1, 2, and 3 to the jury. Bill No. 19 was reserved to the refusal of the court to charge that—

"If the jury should find that from the nature of any attack there was reasonable ground for the defendant to believe that the deceased intended to kill him or to commit a felony upon his person, the killing of the deceased was then a justifiable homicide."

The judge's per curiam to this bill is as follows:

"Not given for the reason it encroaches upon the province of the jury by assuming defendant was not at fault and did not go willingly into the fight. For the further reason it is properly covered in the general written charge."

As an addenda to the bill the judge says he ordered the general charge and the requested special charges Nos. 1, 2, and 3 filed, whereupon counsel for defendant stated:

"I think the requested charges have possibly been covered in the general charge, but we except to the ruling of the court to preserve our rights."

Bill No. 20 was reserved to the refusal of the court to specially charge the jury that—

"A man may repel by force in defense of his person, habitation, or property against one who manifestly intends or endeavors by violence or surprise to commit a known felony such as murder, rape, robbery, arson, and the like upon either. In these cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and, if he kill him in doing so, it is called justifiable self-defense."

This charge was refused for the same reasons assigned by the judge for refusing to give special charge No. 1, and for the additional reason:

"Not given as being incorrect and correctly stated in general written charge. Also no evidence to justify defendant in not retreating."

Bill No. 21 was reserved to the refusal of the court to specially charge the jury that—

"If the accused believed and has reasonable ground to believe, at the time that he fired the shot, that his life was in danger, or that he was in danger of receiving serious bodily harm, then he was justified in acting in self-defense, even to the extent of taking the life of his adversary, and although it should afterward develop that the apparent danger was not, in fact, real."

This charge was not given for the same reasons assigned by the judge for refusing to give special charge No. 1 and for the additional reason that the charge—

"assumes defendant was not at fault and did not go willingly into the fight. Evidence by the defendant himself shows that he had a pistol buckled on his body in a scabbard in the field plowing with deceased."

Considering the three foregoing charges in connection with the general charge of the court, the requested special charges are properly covered in the general charge. No exception was noted to any part of the general charge, and it is therefore assumed that counsel admits its correctness.

"Where the trial judge states in his charge to the jury principles of law applicable to the facts in the case, he is not required to give an additional charge which more specifically directs the attention of the jury to the application of the law to particular facts." State v. Spears, 46 La. Ann. 1524, 16 South. 46; State v. Jackson, 45 La. Ann. 1031, 13 South. 703.

Bill No. 22 is without merit, and is apparently abandoned.

For these reasons I am of the opinion that the defendant had a fair and impartial trial, and that no reversible error is disclosed by the record.